CHARLES BLACK, ADMINISTRATOR (ESTATE OF DEWITT C. BLACK) *v.* GOODWIN, LOOMIS AND BRITTON, INC., ET AL.
(15361)

Peters, C. J., and Borden, Norcott and Palmer, Js.[1]

[1] Subsequent to oral argument in this appeal, Justice Berdon, originally a member of the panel of this court assigned to hear the case, disqualified himself. The parties have agreed to have the appeal decided by the remaining four justices.

Argued April 23---officially released August 20, 1996

*Joel J. Rottner*, with whom, on the brief, were *Joseph F. Skelley, Jr.*, *Brad N. Mondschein* and *Edward W. Gasser*, for the appellant-appellee (defendant Maryland Casualty Company).

*Thomas A. Cloutier*, with whom was *Conrad Ost Seifert*, for the appellee-appellant (plaintiff).

*Douglas W. Hammond* and *Joram Hirsch* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

PALMER, J. This appeal requires us to determine the enforceability of a stipulated judgment under which an insured has assigned to an injured party any claims that the insured has against its insurer in exchange for the injured party's agreement to seek satisfaction of the judgment solely against the insurer. The plaintiff, Charles Black, the administrator of the estate of DeWitt C. Black (decedent),[2] initiated a wrongful death action against White, Wheeler and Company (White). White's insurance carrier, the defendant Maryland Casualty Company (Maryland Casualty), denied coverage and refused to defend White. The plaintiff and White thereupon stipulated to a judgment under which White assigned to the plaintiff any claims that it had against Maryland Casualty in return for the plaintiff's promise to seek satisfaction of the judgment against Maryland Casualty and not against White. The plaintiff then instituted this action against Maryland Casualty.[3] At the conclusion of the trial, a jury returned a verdict in favor of the plaintiff and the trial court rendered judgment accordingly. Maryland Casualty appealed from the judgment of the trial court to the Appellate Court, and we

---

[2] The plaintiff is the father of the decedent.

[3] Goodwin, Loomis and Britton, Inc., an insurance agency, was originally named as a defendant in this action. The complaint against the agency was withdrawn prior to trial, however, after the plaintiff's claim against the agency was settled in the amount of $45,000.

transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The facts relevant to this appeal are undisputed. On June 26, 1989, White, a framing contractor, obtained an insurance binder from Goodwin, Loomis and Britton, Inc. (Goodwin), for a general commercial liability policy with coverage in the amount of $500,000. The insurance binder listed Maryland Casualty as the insurance carrier retained to provide liability coverage for White.

On August 14, 1989, the decedent was employed as a house framer for White. While working on the second floor of a partially completed dwelling, the decedent slipped and fell through an uncovered chimney shaft, striking his head on a concrete floor eighteen feet below. The decedent died the next day from the injuries that he had sustained as a result of the fall.

In December, 1989, the plaintiff filed a wrongful death action against White and the owners of the home, Barbara and George Backman.[4] In accordance with the insurance binder, Goodwin made a demand on Maryland Casualty to defend White in the wrongful death action. Maryland Casualty, however, denied coverage and, further, refused to defend the suit.[5]

Thereafter, on June 10, 1991, the plaintiff and White, through its president, William Wall, entered into a stipulation in settlement of the plaintiff's wrongful death action against White. Under the terms of the stipulation, White stipulated to liability in the plaintiff's action in the

---

[4] The plaintiff's action against Barbara and George Backman was settled prior to trial for $125,000.

[5] As the basis for its decision not to defend, Maryland Casualty informed Goodwin that the insurance policy was not in effect at the time of the decedent's accident because it previously had been cancelled for nonpayment of premium. For purposes of this appeal, however, Maryland Casualty concedes that White was entitled to coverage under the liability policy issued to it by Maryland Casualty.

amount of $500,000, plus interest, for damages resulting from the decedent's death. In addition, White assigned to the plaintiff any and all rights that it had against Maryland Casualty resulting from the denial of coverage and refusal to defend it in the plaintiff's action. In return for the assignment of rights from White, the plaintiff agreed to seek satisfaction of the judgment solely against Maryland Casualty and, accordingly, the plaintiff released White "from further liability regarding the payment and satisfaction of this judgment."[6] The trial court rendered judgment in accordance with the parties' stipulation.

Thereafter, on June 19, 1991, the plaintiff brought this action seeking satisfaction of the stipulated judgment, plus interest and other damages. The plaintiff's

---

[6] The stipulation entered into by the plaintiff and White on May 31, 1991, upon which the trial court rendered judgment, provided in relevant part:

"3. The Defendant, White, Wheeler and Co., Inc., is indebted to and owes the Plaintiff the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) as full settlement of this litigation by the Plaintiff directed against White, Wheeler and Co., Inc.

"4. In order to induce the Plaintiff to enter into this Stipulated Judgment, the Defendant, White, Wheeler and Co., Inc., through its President, William Wall, has represented that White, Wheeler and Co., Inc. is essentially asset-less except for contract and/or tort claims and rights it may have against its former insurance agents, Goodwin, Loomis and Britton, Inc. of 90 Statehouse Square, Hartford, Connecticut or others, relating to insurance contract matters between them, including but not limited to rights related to a binder issued by Goodwin, Loomis and Britton, Inc. on June 26, 1989, on behalf of White, Wheeler and Co., Inc.

"5. The Defendant, White, Wheeler and Co., Inc., through its President, William Wall, agrees to assign all tort and contract claims and rights it has against Goodwin, Loomis and Britton, Inc. or other[s] from which ultimate satisfaction and payment of this Five Hundred Thousand Dollar ($500,000.00) Stipulated Judgment may be had. . . .

"6. The Plaintiff, Charles Black, Administrator of the Estate of DeWitt C. Black . . . agrees to pursue collection and satisfaction of this Five Hundred Thousand ($500,000.00) Judgment against White, Wheeler and Co., Inc. solely through enforcement and pursuance of the above-described rights and claims and to otherwise release White, Wheeler and Co., Inc. and its officers from further liability regarding the payment and satisfaction of this judgment."

amended five count complaint contained three common law claims, breach of contract, negligence and bad faith, and two statutory claims, one for violation of General Statutes § 38a-321[7] and a second for violations of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; and the Connecticut Unfair Insurance Practices Act (CUIPA). General Statutes § 38a-815 et seq.[8] Each of these claims stemmed from Maryland Casualty's denial of insurance coverage to White and its failure to defend White in connection with the plaintiff's wrongful death action. Maryland Casualty, in response, claimed as one of its special defenses that the plaintiff's agreement not to seek satisfaction of the stipulated judgment against White created "no enforceable rights [in the plaintiff] to the assign-

[7] General Statutes § 38a-321 provides in relevant part: "Liability of insurer under liability policy. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. . . . Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[8] The trial court subsequently directed a verdict in favor of Maryland Casualty on the CUTPA/CUIPA count. The plaintiff has filed a cross appeal challenging the directed verdict on that count and, in addition, claiming that the trial court improperly instructed the jury on the issue of punitive damages. Prior to oral argument in this court, however, we granted the plaintiff's conditional motion to withdraw his cross appeal in the event that we affirmed the judgment of the trial court. Because we today affirm the trial court's judgment, we treat the cross appeal as withdrawn.

ment or judgment" and that "the assignment and judgment are void and against public policy as they were obtained by collusion" between the plaintiff and White. On August 30, 1991, the plaintiff filed an offer of judgment pursuant to General Statutes § 52-192a[9] in the amount of $500,000.

After a trial, the jury returned a verdict in favor of the plaintiff on the remaining counts;[10] see footnote 8;

[9] General Statutes § 52-192a provides in relevant part: "Offer of judgment by plaintiff. Acceptance by defendant. Computation of interest. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

[10] The interrogatories submitted to the jury, and the jury's responses thereto, are as follows:

"1. Do you find that [the] defendant Maryland Casualty Company breached its contract with White, Wheeler & Co., Inc.?

"Yes.

"2. Do you find that [the] defendant Maryland Casualty Company acted negligently as to White, Wheeler & Co., Inc.?

"Yes.

"3. Do you find that the plaintiff has satisfied the three elements of the direct action statute?

"Yes.

"4. Do you find that the $500,000 judgment was reasonable?

"Yes.

"5. Do you find that the assignment and judgment were obtained by way of collusion?

"No.

and awarded the plaintiff $500,000 in damages, plus interest under General Statutes § 37-3a.[11] Thereafter, the trial court denied Maryland Casualty's motions to set aside the verdict and for a remittitur, and rendered judgment in favor of the plaintiff in the amount of $1,009,833.40. This amount consisted of the $500,000 in damages that had been stipulated to by the plaintiff and White, interest under § 37-3a in the amount of $191,666.70, and interest under § 52-192a in the amount of $318,166.70 pursuant to the plaintiff's $500,000 offer of judgment.

On appeal, Maryland Casualty claims that: (1) the stipulated judgment is contrary to public policy and, therefore, void as a matter of law; (2) the trial court improperly denied its motion to set aside the verdict

"6. If your answer to Interrogatories Number 1 or Number 2 or Number 3, is 'Yes,' and your answer to Interrogatory Number 4 is 'Yes' and your answer to Interrogatory Number 5 is 'No,' sign the plaintiff's verdict form.

"7. If your answers to Interrogatories Number 1 and Number 2 and Number 3 are 'No,' sign the defendant's verdict form.

"8. If your answer to Interrogatories Number 1 or Number 2 or Number 3 is 'Yes,' and your answer to Interrogatory Number 4 is 'No' or Interrogatory Number 5 is 'Yes,' sign the defendant's verdict form.

"9. Do you find that the defendant breached its duty to deal fairly and in good faith with White, Wheeler & Co., Inc.?

"Yes.

"10. Do you award punitive damages to the plaintiff?

"No.

"11. Do you find that the plaintiff is entitled to an award of interest?

"Yes.

"12. If your answer to Interrogatory Number 11 is 'Yes,' enter the day upon which the award of interest should commence?

"19 June 1991."

[11] General Statutes § 37-3a provides in relevant part: "Rate recoverable as damages. Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. . . ."

because the plaintiff failed to establish the reasonableness of the stipulated judgment and, further, that the trial court improperly prevented Maryland Casualty from presenting evidence that the stipulated judgment was unreasonable; (3) the trial court improperly instructed the jury that Maryland Casualty was required to prove collusion between White and the plaintiff by clear and convincing evidence; (4) the trial court's award under § 52-192a violated Maryland Casualty's constitutional rights to a jury trial and to due process of law; and (5) the trial court improperly denied Maryland Casualty's request for a remittitur in light of the sums already paid to the plaintiff by Goodwin and by Barbara and George Backman. We are not persuaded by any of these claims and, therefore, affirm the judgment of the trial court.[12]

I

Maryland Casualty maintains that a stipulated judgment is contrary to public policy, and hence unenforceable, when, as here, the judgment contains a provision under which an insured assigns to an injured party all rights that the insured has against its insurer in exchange for the injured party's agreement that it will seek to satisfy the judgment against only the insurer. We disagree.

It is well settled that an insurer who maintains that a claim is not covered under its insurance policy can

---

[12] Maryland Casualty also claims that the trial court improperly: (1) denied its motion for a directed verdict on the bad faith count; and (2) instructed the jury regarding the standard of proof applicable to establish bad faith. Although the jury found that Maryland Casualty had acted in bad faith in denying coverage and refusing to defend, it awarded the plaintiff no damages on the bad faith count. See footnote 10. At oral argument, Maryland Casualty acknowledged that it had suffered no cognizable aggrievement in light of the jury's conclusion that the plaintiff was not entitled to any damages on the bad faith count. Accordingly, we decline to address Maryland Casualty's claims concerning that count.

"either refuse to defend or it [can] defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose." *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 113, 230 A.2d 21 (1967) (*Missionaries*). An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured. *Alderman* v. *Hanover Ins. Group.*, 169 Conn. 603, 611, 363 A.2d 1102 (1975); *Missionaries*, supra, 114. Moreover, an insurer, "after breaking the contract by its unqualified refusal to defend, should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions. Nor should [the insurer] be permitted, by its breach of the contract, to cast upon the [insured] the difficult burden of proving a causal relation between the [insurer]'s breach of the duty to defend and the results which are claimed to have flowed from it." *Missionaries*, supra, 114.

In both *Missionaries* and *Alderman*, the action against the insurance carrier alleging wrongful failure to defend and breach of the insurance contract had been brought by the *insured*. The present case requires us to decide whether, in connection with a stipulated settlement between an injured party and an insured, the insured may assign to the injured party all rights that it may have against its insurer in exchange for the injured party's agreement to seek satisfaction of the judgment solely under the assignment. Maryland Casualty argues that to enforce such a stipulated judgment would promote fraud or collusion between the injured party and the insured and, therefore, that we should adopt a per se rule rejecting all such settlement agreements as against public policy.

The weight of authority is to the contrary. The "majority rule is based on the rationale that when an insurer has refused to defend its insured, it is in no position to argue that the steps the insured took to protect himself should inure to the insurer's benefit." *Greer* v. *Northwestern National Ins. Co.*, 109 Wash. 2d 191, 204, 743 P.2d 1244 (1987); see also *Red Giant Oil Co.* v. *Lawlor*, 528 N.W.2d 524, 534 (Iowa 1995); *Miller* v. *Shugart*, 316 N.W.2d 729 (Minn. 1982); *Metcalf* v. *Hartford Accident & Indemnity Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964); *Griggs* v. *Bertram*, 88 N.J. 347, 443 A.2d 163 (1982). Under the majority view, when an insurer breaches its contractual duty to defend and, as a result, improperly leaves its insured to fend for itself, the insurer will not be heard to complain when the insured enters into a settlement agreement "so long as the insured acts in good faith, and without fraud." 7C J. & J. Appleman, Insurance Law and Practice (1979) § 4690, p. 229. Furthermore, the settlement must be reasonable. *Alderman* v. *Hanover Ins. Group.*, supra, 169 Conn. 611. Thus, the insured "can make his own settlement, consent to the entry of judgment with whatever stipulations he can make that are favorable to his interests, such as that the plaintiff will not levy on specified property of the insured, or simply assign certain rights to the plaintiff." 7C J. & J. Appleman, supra, § 4690, pp. 229–31.

We are persuaded that the majority rule is sound. The principle urged by Maryland Casualty "would render meaningless the rule of indemnity in wrongful refusal to defend cases and ignores the law of assignment." *Red Giant Oil Co.* v. *Lawlor*, supra, 528 N.W.2d 534. We acknowledge that the possibility of fraud or collusion exists when an injured party and an insured enter into a stipulation conditioned on the injured party's agreement to seek satisfaction against the insured's insurance carrier and not against the insured. We are convinced, however, that the appropriate method by

which to address this possibility is not to assume such impropriety but, rather, to permit the insurer to contest the stipulated judgment on the ground that it was improperly obtained. "[O]ur system of justice is adequately equipped to discern the existence of fraud and collusion." (Internal quotation marks omitted.) Id.; see also *Keystone Ins. Co.* v. *Raffile*, 225 Conn. 223, 236, 622 A.2d 564 (1993) ("[w]e see no reason why the traditional tests of credibility, testimony under oath and cross-examination . . . are insufficient to provide protection against fraudulent claims").

Accordingly, we are satisfied that the right of the insurer to challenge the settlement entered into by its insured on grounds of fraud, collusion or unreasonableness provides it with ample opportunity to contest the propriety of such a settlement. We conclude, therefore, that the stipulated judgment is not void as contrary to public policy.

Maryland Casualty further claims that White's assignment of rights in favor of the plaintiff was not effective because the plaintiff had released White from liability and, accordingly, White had incurred no payment obligation requiring indemnification. In other words, Maryland Casualty claims that if "there is no obligation of White . . . under the judgment, there is no obligation to indemnify White . . . from it."

This claim is without merit. First, we reject the underlying premise of Maryland Casualty's argument that the contract of insurance was one of indemnity and not one of general liability. We have recently explained the main difference between a liability policy and an indemnity policy: "Whether an insurance contract is a liability policy or an indemnity policy depends upon the intention of the parties, as evidenced by the phraseology of their agreement . . . . The chief difference between a liability policy and an indemnity policy is

that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured." (Citation omitted; internal quotation marks omitted.) *Cohn* v. *Pacific Employers Ins. Co.*, 213 Conn. 540, 546–47, 569 A.2d 544 (1990). The policy issued by Maryland Casualty covering White provides that Maryland Casualty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Thus, the insurance policy is plainly one of liability rather than indemnity.[13]

Furthermore, as we have previously stated, "[t]he [insurer], after breaking the contract by its unqualified refusal to defend, should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions." *Missionaries*, supra, 155 Conn. 114. "An insurer may not hide behind the language of the policy after the insurer abandons its insured and the insured settles the claim by agreement." *Red Giant Oil Co.* v. *Lawlor*, supra, 528 N.W.2d 532.

We conclude, therefore, that the stipulated judgment was in all respects enforceable. Accordingly, Maryland Casualty's claim must fail.

II

Maryland Casualty next claims that the plaintiff failed to sustain his burden of proof that the stipulated judgment in the amount of $500,000 was reasonable and,

[13] We also note that the plaintiff's claim under § 38a-321 does not depend on the assignment of rights under the stipulation because, under that statutory provision, the insurer is liable whether its contract is one of liability or indemnity. See General Statutes § 38a-321 (insurer is absolutely liable whenever there is a loss under the policy, and "payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty").

further, that the trial court improperly precluded Maryland Casualty from adducing evidence of the unreasonableness of the stipulated settlement. We disagree.

The following additional facts are necessary to our resolution of this issue. Prior to the commencement of trial, the plaintiff filed a motion in limine seeking to prohibit Maryland Casualty from offering evidence concerning any defenses that may have been available to White in an action by the plaintiff against White.[14] The trial court granted the plaintiff's motion to the extent that Maryland Casualty sought to rely on such evidence as a defense to this action. The trial court expressly indicated, however, that such evidence might otherwise be admissible as proof that the settlement between the plaintiff and White was unreasonable.[15]

After the plaintiff had testified on direct examination, Maryland Casualty sought to question him as to whether, in agreeing to the $500,000 settlement, he had

---

[14] The plaintiff requested that the trial court preclude "any evidence dealing with the question of whether the decedent was an employee of White . . . and any testimony or other evidence dealing with alleged contributory or comparative negligence arising from alleged drug use, or that the decedent should have looked where he was walking, or any other evidence tending to show the decedent was in any way responsible for his own death . . . ."

[15] The trial court stated in relevant part as follows: "[T]he Court will allow the Defense to counter evidence offered by the Plaintiff as to the reasonableness of the settlement entered into between the Plaintiff and [White]. The Court will make its decision on the specific evidence offered by the Defense which is similar to underlying issues evidence as the case proceeds." The trial court later amplified its ruling on the plaintiff's motion in limine as follows: "I think there has to be some consideration on the liability, as much as you might consider liability at a pretrial or a special masters hearing. Not in detail, not argued, not evidentiary. Some indication of liability issues. I don't know how you could find a settlement to be reasonable where [liability] is completely foreclosed. Now liability can't be brought in as the basis of the defense here because we've stricken the special defenses, but on the issue of reasonableness, I think to some extent, liability has to be considered. So I will rule in favor of the Defense in this case as far as the fact that some consideration of liability should enter into the expert's opinion."

considered the extent to which the decedent's fall may have been due to the decedent's own negligence. Maryland Casualty also sought to elicit from the plaintiff information concerning the decedent's activities during the weekend preceding the accident, apparently for the purpose of demonstrating that the decedent's possible use of cocaine or alcohol over that weekend may have been a contributing cause of the accident. The trial court sustained the plaintiff's objection to this line of questioning on the ground that any possible link between the decedent's conduct in the days preceding the accident and the cause of the accident was so attenuated that the jury would be required to speculate as to any such relationship.

William Wall, the president of White, also testified for the plaintiff. On direct examination, Wall testified about White's purchase of liability insurance through Goodwin and its efforts to secure coverage and a defense by Maryland Casualty in the plaintiff's action against White. On cross-examination, Maryland Casualty sought to elicit testimony from Wall regarding the issues of comparative negligence and workers' compensation. The trial court sustained the plaintiff's objection to the questions on the ground that Maryland Casualty had failed to link the proffered testimony to any issue in this case.[16]

The plaintiff also presented the testimony of Dale Faulkner, an attorney, regarding the reasonableness of the $500,000 settlement. Although Faulkner opined that the settlement was reasonable, he acknowledged that he had not considered the strength of the plaintiff's case on liability in reaching his determination. On cross-examination, Maryland Casualty sought to ask Faulkner whether he believed that the plaintiff and Wall had

---

[16] For example, Maryland Casualty never claimed that this line of questioning was related to the issue of the reasonableness of the settlement.

considered possible defenses to the wrongful death action in reaching their agreement. The trial court sustained the plaintiff's objection to this question, because there was insufficient evidence in the record substantiating these defenses, thereby making the question speculative.

Michael Buckmir, an insurance claims consultant with experience in arbitration and mediation, also testified for the plaintiff. Buckmir stated that, in his opinion, the $500,000 settlement was reasonable and, in addition, that he had taken the issue of liability into account in reaching his conclusion. Maryland Casualty sought to cross-examine Buckmir regarding the possibility that the plaintiff's claim against White might have been barred by the exclusivity provisions of the workers' compensation laws. The trial court sustained the plaintiff's objection to this question. The court, however, allowed Maryland Casualty to conduct a voir dire examination of Buckmir outside the presence of the jury. During his voir dire testimony, Buckmir stated that the decedent had been an independent contractor and not an employee of White at the time of the accident. At the conclusion of Buckmir's voir dire testimony, Maryland Casualty renewed its request to question Buckmir regarding the possibility that the plaintiff's claims against White might be prohibited by the workers' compensation statutes. In light of Buckmir's testimony, and in the absence of any other evidence to indicate that the decedent was an employee of White at the time of his accident, the trial court denied Maryland Casualty's request.

The sole witness for the defense was Conrad Seifert, an attorney who had represented the plaintiff in connection with the negotiations that culminated in the stipulated judgment. Maryland Casualty sought to question Seifert about the possibility that White might have had a workers' compensation defense to the plaintiff's

wrongful death claim against it. Maryland Casualty argued that testimony by Seifert on this issue might tend to establish that the settlement was collusive. The trial court sustained the plaintiff's objection to this line of inquiry.

It is well settled that when an insurer improperly fails to defend an insured who subsequently settles the case with the injured party, the insurer is estopped from raising the issue of the insured's liability as a defense to an action arising from the insurer's failure to defend. See 2 Restatement (Second), Judgments § 58 (1) (a) (1982) ("indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person"); see also *Schurgast* v. *Schumann*, 156 Conn. 471, 491, 242 A.2d 695 (1968) ("In the instant case, [the insurer] chose to refuse to defend and, in so doing, breached its contract with [the insured]. It is therefore under a duty to pay the judgment obtained against the [insured] by [the injured party] up to the limit of liability fixed by its policy."). Nevertheless, the plaintiff is required to prove that the settlement—whether it be by stipulated judgment or otherwise—was reasonable. See *Alderman* v. *Hanover Ins. Group*, supra, 169 Conn. 611.

In determining whether a settlement is reasonable, the jury is entitled to consider not only the damage sustained by the injured party, but also the likelihood that the injured party would have succeeded in establishing the insured's liability. "In order to recover the amount of the settlement from the insurer, the insured need not establish actual liability to the party with whom it has settled 'so long as . . . a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an *amount reasonable in view of the size of possible recovery and degree of probability of [a] claimant's success against the [insured].*' " (Emphasis added.) *Luria Bros. & Co.* v.

*Alliance Assurance Co.*, 780 F.2d 1082, 1091 (2d Cir. 1986). Accordingly, the strength of the plaintiff's case is a factor that the jury may consider in deciding whether the settlement is reasonable.[17]

Maryland Casualty first maintains that the plaintiff failed to present any evidence on the reasonableness of the settlement between the plaintiff and White. This assertion is simply incorrect. As described earlier, the plaintiff presented the testimony of two experts, Faulkner and Buckmir, who opined that a settlement of $500,000, plus interest, was reasonable. Although Faulkner acknowledged that he had not taken liability into account in making his determination, Buckmir's testimony carried no such limitation.[18] Maryland Casualty has provided no persuasive reason why the testimony of these two witnesses was not sufficient to sustain the plaintiff's burden of proof regarding the reasonableness of the settlement.

Maryland Casualty also claims that the trial court improperly precluded it from adducing evidence of the unreasonableness of the settlement. Specifically, Maryland Casualty maintains that the trial court unduly limited its examination of the plaintiff, Wall, Faulkner, Buckmir and Seifert regarding possible defenses that White would have had to the plaintiff's wrongful death

---

[17] In its jury charge, the trial court expressly instructed the jury that, in evaluating the issue of the reasonableness of the settlement, it was to take into consideration the strength of the liability and damages elements of the plaintiff's wrongful death claim against White: "Now in determining if the amount was reasonable, there's no mathematical formula by which you must proceed. The test as to whether the settlement is reasonable is what a reasonably prudent person in the position of the Defendant would have settled for considering the liability and damage aspects of the Plaintiff's claim, as well as the risk of going to trial."

[18] The plaintiff also presented the testimony of Ward Curran, an economist, who testified regarding the future earning capacity of the decedent in substantiation of the damages element of the plaintiff's case. Maryland Casualty has not challenged the sufficiency of the evidence presented by the plaintiff on the subject of damages.

claim, testimony which, Maryland Casualty asserts, would have demonstrated the unreasonableness of the settlement. We disagree.

With this background, we now turn to Maryland Casualty's claims. Our careful review of the trial record persuades us that none of the challenged evidentiary rulings constituted an abuse of discretion.[19]

With respect to Maryland Casualty's cross-examination of the plaintiff, Faulkner and Buckmir, the trial court reasonably concluded that the testimony sought to be adduced was too speculative. In the case of each of these witnesses, Maryland Casualty has made no showing that its questions were founded on more than conjecture or surmise.[20] With respect to Wall, Maryland Casualty failed to link Wall's proffered testimony to the reasonableness of the settlement between the plaintiff and White and, accordingly, the trial court did not abuse its discretion in prohibiting the challenged questioning.

As to Seifert, Maryland Casualty claims that it was precluded from questioning him about workers' compensation as a possible defense to liability. This assertion mischaracterizes the record, which reveals that Maryland Casualty sought to question Seifert for the purpose of establishing collusion between the plaintiff and White. Although the issues of reasonableness and collusion are not unrelated, they are not interchangeable. Having argued in the trial court only that Seifert's proffered testimony was admissible on the issue of collusion, Maryland Casualty will not now be heard to claim that the testimony was improperly excluded

---

[19] It is axiomatic that the trial court has broad discretion to determine the admissibility of evidence, and its rulings will not be disturbed on appeal absent an abuse of that discretion. *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 232, 635 A.2d 798 (1994).

[20] We note that Maryland Casualty offered no witness of its own to establish, as a matter of fact, either that the decedent had been an employee of White or that the decedent had been partially responsible for the accident.

because it may have been relevant to another issue in the case. See, e.g., *Mays* v. *Mays*, 193 Conn. 261, 268, 476 A.2d 562 (1984). We conclude, therefore, that the trial court did not improperly limit Maryland Casualty's right to elicit testimony regarding the alleged unreasonableness of the settlement.

## III

Maryland Casualty further claims that the trial court improperly instructed the jury that it must prove its special defense of collusion by clear and convincing evidence.[21] Maryland Casualty argues that it should have been required to prove collusion by the lesser standard of a preponderance of the evidence in light of the fact that it sought to raise its claim of collusion as a shield rather than as a sword. We are not persuaded.

Maryland Casualty concedes that the appropriate standard of proof for the party who seeks to prevail in a civil fraud action is clear and convincing evidence. See, e.g., *Rego* v. *Connecticut Ins. Placement Facility*, 219 Conn. 339, 343, 593 A.2d 491 (1991); *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 327–29, 593 A.2d 478 (1991). "In law, collusion is a species of fraud. Bouvier's Law Dictionary (Rawle's 3d Rev.); see *Mills* v. *Mills*, 119 Conn. 612, 619, 179 A. 5 [1935]." *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, 309, 130 A.2d 804 (1957). Thus, collusion may be defined as "[a]n agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." (Internal quotation marks omitted.) *E. Udolph, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 751, 573 A.2d 1211 (1990). Because collusion is a form of fraud, we see no reason, and Maryland Casualty has

---

[21] The trial court charged the jury as follows: "If you find proven by the Defendant by clear and convincing evidence that the events leading up to the stipulated judgment were collusive, then you must render a verdict for the Defendant and award nothing to the Plaintiff."

presented none, why the standard of proof for establishing collusion should be different depending on whether it comprises a cause of action or is raised as a special defense.[22] See *Pelarinos* v. *Henderson*, 34 Conn. App. 726, 731, 643 A.2d 894 ("[t]he defendants had the burden of proving their special defense of fraudulent misrepresentation by clear and convincing evidence"), cert. denied, 231 Conn. 909, 648 A.2d 155 (1994). Accordingly, we reject Maryland Casualty's claim.

## IV

Maryland Casualty also contends that the trial court's award of interest pursuant to § 52-192a violated its federal constitutional rights to a jury trial and due process of law.[23] We disagree.

The trial court, on the basis of the jury's finding that the plaintiff was entitled to interest pursuant to § 37-

---

[22] Maryland Casualty cites *Rego* v. *Connecticut Ins. Placement Facility*, supra, 219 Conn. 339, in support of its claim. In *Rego*, the defendant insurance carrier had pleaded the special defenses of arson and concealment or misrepresentation in an action to recover fire insurance proceeds. At the conclusion of the trial, the court instructed the jury that the insurer was required to establish its special defense of concealment or misrepresentation by clear and convincing evidence. On appeal, we concluded, in light of the fact that the insurer was required to prove its special defense of arson by a preponderance of the evidence; see *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 540 A.2d 693 (1988); that it would be illogical and impractical to require the insurer to prove its special defense of concealment or misrepresentation by clear and convincing evidence. *Rego* v. *Connecticut Ins. Placement Facility*, supra, 343–46. In rejecting the insured's claim regarding the appropriate standard of proof, we also relied on the distinction between common law fraud and the insurer's defense of concealment or misrepresentation, concluding that the two claims were not "sufficiently similar to warrant applying an elevated burden of proof to the latter." Id., 347. *Rego*, therefore, is inapposite to this appeal.

[23] Although Maryland Casualty has also raised this claim under the analogous provisions of the Connecticut constitution, it has provided no independent analysis of the claim under the state constitution. Accordingly, we do not consider Maryland Casualty's state constitutional argument. See *State* v. *Lopez*, 235 Conn. 487, 497, 668 A.2d 360 (1995); *State* v. *Joly*, 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

3a, awarded the plaintiff interest in the amount of $191,666.70. Further, in accordance with the provisions of § 52-192a, the trial court concluded that the plaintiff had "recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment' " of $500,000 and, accordingly, awarded additional statutory interest of $318,166.40. Maryland Casualty claims that the award of interest under § 52-192a, either alone or in conjunction with the award of interest under § 37-3a, improperly chilled its right to a trial by jury and violated its right to due process because the award was fundamentally unfair.[24]

Maryland Casualty first maintains that the assessment of interest under § 52-192a constituted a punishment for its exercising its right to elect a jury trial and, therefore, impermissibly infringed upon that right. This argument is without merit. The interest assessment is not levied on all who elect to go to trial in light of an offer of judgment, but only on those who subsequently suffer a jury verdict against them in excess of the amount set forth in the offer. Furthermore, the strong public policy favoring the pretrial resolution of disputes; see *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 174, 646 A.2d 195 (1994); is substantially furthered by encouraging defendants to accept reasonable offers of judgment. We find no constitutional violation in the legislature's decision to implement this important public policy in such a manner.

Maryland Casualty also claims that § 52-192a is fundamentally unfair in violation of its constitutional right to due process. Specifically, it contends that its "[d]ue [p]rocess right is protected only by requiring the trial court to determine the reasonableness of the [o]ffer of

[24] Maryland Casualty's sole challenge is to the constitutionality of § 52-192a as applied to the facts of this case. Maryland Casualty does not claim that the trial court improperly construed either § 52-192a or § 37-3a in awarding interest under those two statutory provisions.

[j]udgment at the time of filing" and that it is unfair to award § 37-3a interest without deducting any other settlement payments from the amount of the jury award when applying § 52-192a.

"Legislative efforts to structure and accommodate the burdens and benefits of economic life carry a presumption of constitutionality. One complaining of a due process violation flowing therefrom must establish that the legislature has acted in an arbitrary and irrational way." *Schieffelin & Co.* v. *Dept. of Liquor Control,* 194 Conn. 165, 186, 479 A.2d 1191 (1984). "Even under this less exacting test of constitutionality, an economic regulation will survive a substantive due process test only if it is both rational and related to a legitimate state purpose. *Campbell* v. *Board of Education,* 193 Conn. 93, 105, 475 A.2d 289 (1984)." *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey,* 229 Conn. 312, 319, 640 A.2d 101 (1994). As we have indicated, § 52-192a furthers the legitimate public policy interest of encouraging the pretrial settlement of claims. Moreover, the legislature is not required to implement a public policy in a manner that is most narrowly tailored to achieve its end; its legislation will survive a substantive due process challenge so long as it is rationally related to a legitimate state purpose. Because it is reasonable to use the total amount of the jury award as the benchmark for assessing the reasonableness of the offer of judgment, the trial court's application of § 52-192a does not run afoul of the due process clause.[25]

V

Finally, Maryland Casualty claims that the trial court improperly failed to order a remittitur under General

[25] We also note that to the extent that Maryland Casualty challenges the fairness of including an award of interest under § 37-3a in the determination of whether the jury award met or exceeded the offer of judgment, that argument provides no basis for Maryland Casualty to prevail. Even if the trial court had not considered the § 37-3a interest in determining the propriety of

Statutes § 52-216a.[26] Specifically, it asserts that the trial court was required to deduct from the judgment the settlement payments totalling $170,000 that the plaintiff received from Goodwin and from Barbara and George Backman.[27] We disagree.

"The decision whether to reduce a jury verdict because it is 'excessive as a matter of law' rests solely within the discretion of the trial court, pursuant to General Statutes § 52-216a. See, e.g., *Seals* v. *Hickey*, 186 Conn. 337, 348, 441 A.2d 604 (1982). Further, the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an 'abuse of discretion.' *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 14, 591 A.2d 1261 (1991); *Seals* v. *Hickey*, supra, 348." *Mulligan* v. *Rioux*, 229 Conn. 716, 753, 643 A.2d 1226 (1994), on remand, 38 Conn. App. 546, 662 A.2d 153 (1995).

The trial court found "the total amount of the judgment together with the prior settlements not to be

an interest award under § 52-192a, because the jury's award of $500,000 was equal to the plaintiff's offer of judgment, an award of interest under § 52-192a would nevertheless have been proper.

[26] General Statutes § 52-216a provides: "Reading of agreements or releases to jury prohibited. Adjustments for excessive and inadequate verdicts permitted. An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

[27] See footnotes 3 and 4.

unreasonable, not to shock [the] conscience." In light of the fatal injuries suffered by the decedent, Maryland Casualty has failed to establish that the trial court abused its discretion in not finding the judgment amount excessive and thereby refusing to order a remittitur.

Maryland Casualty relies on *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989), in which the Appellate Court concluded that joint and several liability would attach, thereby rendering a subsequent damage award improperly duplicative of an earlier one, if "(1) [the defendants in the two actions] are joint tortfeasors, (2) the judgment which was satisfied involved damages for the exact same injuries as involved in the present action, and (3) the determination by the factfinder on the issue of damages in the first action is entitled to govern the amount of damages involved in the present action under the doctrine of collateral estoppel." Id., 397–98. When an award is made pursuant to a settlement, however, the underlying issues have not been fully and fairly litigated, and, therefore, the earlier award can have no preclusive effect on a subsequent action. See *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 600, 674 A.2d 1290 (1996). *Gionfriddo* thus provides no authority for Maryland Casualty's argument.

The judgment is affirmed.

In this opinion the other justices concurred.