The defendant, Western World Insurance Company ("Western World"), appeals from a judgment entered in favor of the plaintiff, the City of Tuscumbia, declaring that the insurer's policy afforded coverage to the City.
On June 19, 1989, William Charles Estes, Jr., was struck by a vehicle driven by Robin Reed Holliman. Earlier in the evening of June 19, at 7:36 P.M., the Tuscumbia Police Department had received a call from a Ms. Geneva Eckles complaining Estes was on her front porch and that something was wrong with him. She told the dispatcher that the police needed to come get him off her front porch. When the police *Page 1160 
officers arrived, Estes was still on the front porch of Ms. Eckles's home.
In an affidavit, Ms. Eckles said that Estes appeared to be drunk and smelled like whiskey. She also stated that Estes resisted when asked by the officers to get into the police car. However, the two police officers present that evening, Leon Brown and Bernard Pugh, employees of the City of Tuscumbia, related a different version of the circumstances of that evening. They both testified that Estes appeared to be in bad health and was wearing a colostomy bag. In response to questioning as to whether Estes appeared to be intoxicated, both officers answered no.
Estes agreed to go to the police station with the officers so that he could telephone someone to pick him up. Estes was not handcuffed while riding in the police car to the station, or at any other time that night.
When they arrived at the station, Estes called his father, who refused to come and pick him up. Estes was then asked whether, if the police officers gave him a ride to the municipal limits, he could walk home from there; he answered yes. Assistant Chief Hellums instructed the officers to drive Estes to the municipal limits and to release him so that he would walk home from there.
At approximately 8:35 P.M., the Tuscumbia Police Department received a call from the Dixie Service Station, reporting that a man, fitting the description of Estes, was at that station and acting as if he was going to steal something. The police officers were dispatched, but upon their arrival Estes was not on the premises. At 8:59 P.M., the officers saw Estes walking alongside Highway 72. They asked him where he was going and he said he was on his way home. This was the last time officers Brown and Pugh saw Estes that evening.
The Tuscumbia Police Department received a call at 9:47 P.M., from someone who said that a pedestrian had been struck by a vehicle. Officer Vaughn investigated the accident and determined that Estes had been struck by a vehicle operated by Robin Reed Holliman.
Estes sued the City of Tuscumbia, alleging that he had been negligently released and, as a result, had been injured when he was struck by an automobile. The City forwarded the complaint to its liability insurance carrier, Western World, and requested that Western World defend and indemnify the City pursuant to the terms of the liability policy issued to the City. Western World denied coverage and refused to defend and indemnify the City. The City then filed its action for declaratory relief. In a nonjury trial, the circuit court found in favor of the City, holding that the policy issued by Western World afforded coverage to the City in the action filed by Estes.
Western World had issued a "law enforcement officer's liability insurance policy" to the City's police department, and that policy was in effect on June 19, 1989. The policy stated in pertinent part:
 "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of negligent acts, errors, or omissions of the insured as follows:
"Coverage A — Personal Injury
"Coverage B — Bodily Injury
"Coverage C — Property Damage"
The definition of "bodily injury" reads as follows:
 "Bodily Injury means bodily injury, sickness or disease sustained by any person accidentally caused by an act of the insured in making or attempting to make an arrest, while under arrest, or while resisting an overt attempt to escape by a person under arrest. No act shall be deemed to be or result in bodily injury unless committed in the regular course of duty by the insured."
The City argues that the actions of its officers in transporting Estes to the police station and later giving him a ride to the municipal boundary were sufficient to constitute an "arrest" within the terms of the policy. An "arrest" occurs when a reasonable person being detained or held by the police would believe that he is not free to leave. See Robinson v.State, 574 So.2d 910 (Ala.Cr.App. 1990); Williams v.State, 527 So.2d 764, 769 (Ala.Cr.App. 1987). An "arrest" has also been said to occur *Page 1161 
when one's freedom of movement has been curtailed. Waldropv. State, 462 So.2d 1021 (Ala.Cr.App. 1984); State v.Butler, 461 So.2d 922 (Ala.Cr.App. 1984).
Assuming, arguendo, that when Estes was picked up at Ms. Eckles's home he was under arrest, it is clear from the evidence that at the time of the accident, he had been released and had taken it upon himself to walk home.
In order for bodily injury to be covered under the terms of the policy, it must have been accidentally caused by the City's police department in one of three ways: 1) by an act of one of the police officers in making or attempting to make an arrest; 2) by an act of one of the police officers while a person is under arrest; or, 3) by an act of one of the police officers while a person under arrest is trying to escape.
The language in an insurance policy should be given the same meaning that a person of ordinary intelligence would reasonably give it. St. Paul Fire Marine Insurance Co. v. EdgeMemorial Hospital, 584 So.2d 1316 (Ala. 1991). InGardner v. Cumis Ins. Soc., Inc., 582 So.2d 1094, 1096
(Ala. 1991), this Court stated:
 "Where there is no ambiguity in the terms of an insurance contract as written, express provisions of the policy, including any exclusions, cannot be defeated by making a new contract for the parties. . . . Although insurance policies containing ambiguities are to be construed in favor of the insured, it is imperative that courts enforce unambiguous policies as written."
(Citations omitted.) See also Best v. Auto Owners Ins.Co., 540 So.2d 1381 (Ala. 1989).
The liability insurance policy at issue here is unambiguous as written. It provides no coverage for bodily injury to an individual who has been released by the police and is injured later by a third party who has no affiliation with the City's police department. Consider the following: suppose an individual had been arrested and then released on bond. If he was subsequently injured by a third party, it cannot be said that there would be coverage under the terms of the Western World contract.
The judgment of the trial court is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.