## KEVIN O'BRIEN *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY
### (15151)

Peters, C. J., and Callahan, Norcott, Katz and Palmer, Js.

Argued October 26, 1995—decision released January 30, 1996

*Daniel P. Scapellati,* with whom were *Donna-Maria Lonergan* and, on the brief, *John W. Lemega,* for the appellant (plaintiff).

*Frederick L. Murolo,* for the appellee (defendant).

NORCOTT, J. The sole issue in this appeal concerns the application of an insurance policy's "other insur-

ance" clause to an insured pedestrian injured by an uninsured motor vehicle. The plaintiff, Kevin O'Brien, appeals from the judgment of the trial court denying his application to vacate an arbitration award in favor of his insurer, the defendant, United States Fidelity and Guaranty Company. The trial court determined that, in addition to being covered under a personal automobile liability insurance policy issued to him by the defendant, the plaintiff was also covered as a resident relative under his father's automobile liability insurance policy issued by Aetna Casualty and Surety Company (Aetna), and because both policies contained identical "other insurance" clauses, the plaintiff's loss must be allocated, pro rata, between the two insurers. The plaintiff claims that the defendant's "other insurance" clause cannot be so construed because such a construction: (1) compromises the plaintiff's uninsured motorist coverage; (2) violates public policy; and (3) is improper based on the plain language of the clause, or at the very least, because it is ambiguous and, therefore, must be construed in favor of the insured. We agree that, under the circumstances of this case, the "other insurance" clause is ambiguous and, therefore, must be construed in favor of the plaintiff. Accordingly, we reverse the judgment of the trial court.[1]

The following facts are undisputed. On October 6, 1990, the plaintiff, while a pedestrian, sustained injuries from being struck by an uninsured motor vehicle.[2] At the time of the accident, the plaintiff was insured under a personal automobile liability policy issued to him by the defendant. The defendant's policy provided uninsured motorist coverage to the plaintiff in the amount

[1] Because we conclude that the "other insurance" clause is ambiguous and, therefore, must be construed in favor of the insured, we need not address the plaintiff's remaining arguments.

[2] The vehicle was owned by Christopher Graham and operated by Paulo Graham, neither of whom was insured under an automobile liability policy.

of $50,000 per person and $100,000 per accident. The plaintiff, who lived with his father and stepmother at the time of the accident, was insured as a resident relative under the Aetna policy. Following the accident, in accordance with the defendant's policy, the plaintiff initiated arbitration proceedings seeking uninsured motorist benefits. In July, 1993, at the commencement of the arbitration hearing, the defendant submitted the Aetna policy to the arbitrator. The defendant claimed that the Aetna policy provided the plaintiff with an additional $600,000 in uninsured motorist benefits, which had to be considered in determining the defendant's liability. Both policies contained identical "other insurance" clauses,[3] which provided: "If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance. However, any insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance."[4] In light of the "other insurance" clauses contained in both policies, the defendant argued that the plaintiff's loss should be allocated pro rata between the insurers. The arbitrator agreed and, having determined that the plaintiff's claim was worth $35,000, allocated the loss accordingly.[5]

---

[3] Originally, both the arbitrator and the trial court found that the "other insurance" clause contained in the Aetna policy was slightly different from that contained in the defendant's policy. Subsequently, however, the trial court reconsidered the plaintiff's claim and acknowledged that the Aetna policy had been amended and that, at all relevant times, both policies contained identical "other insurance" clauses.

[4] All of the policies referred to herein define "you" as used in the phrase "with respect to a vehicle *you* do not own," as encompassing both the named insured and the spouse if a resident of the same household. See *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn. 779, 787, 606 A.2d 990 (1992).

[5] The share of loss for which each insurer was responsible was determined by calculating the proportion that the benefits available under its policy bore to the total overall benefits available. Thus, the defendant was responsible for

Thereafter, the plaintiff applied to the Superior Court to vacate the arbitration award, claiming that the arbitrator had exceeded his power and had improperly decided that the defendant was obligated to pay only its prorated share of the plaintiff's loss. The trial court disagreed with the plaintiff, concluding that the policies were in direct conflict because both anticipated that uninsured motorist benefits would be available to the plaintiff only after other applicable similar policies were exhausted. Accordingly, the trial court held that the plaintiff's loss should be allocated pro rata between the two insurers.[6]

Subsequently, the plaintiff requested reargument and reconsideration of the trial court's decision. In support of his request, the plaintiff cited the fact that the Aetna policy's "other insurance" clause that had been previously considered by the court had been deleted by endorsement and replaced with a different clause, thereby resulting in both "other insurance" clauses being identical. See footnote 3. The plaintiff argued that there was a substantial likelihood that the court would have ruled differently had it not considered the deleted provision. The trial court granted the plaintiff's motion for reconsideration but again refused to vacate the arbitration award. It reasoned that because identical "other insurance" clauses applied, neither of which contemplated that policy being primary, the policies were in direct conflict and, therefore, they both should be

---

7.7 percent ($50,000/$650,000) of the total loss of $35,000, less a setoff of $1117 in no-fault benefits previously paid, or $1578.

[6] The court noted that the benefits available under the Aetna policy at the time of the accident were no longer available to the plaintiff because he had failed to apply for such benefits during the period provided in the policy. This fact, however, is not relevant to our decision. At oral argument before this court, the plaintiff conceded this and clarified that his claim was that, regardless of the availability of benefits under the Aetna policy, the defendant's policy did not create an obligation on his part to pursue a claim against Aetna.

treated as primary and the loss should be allocated pro rata between them. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

On appeal, each party claims that the first sentence of the "other insurance" clause, if properly interpreted, is dispositive of the appeal in its favor. In the alternative, each party claims that the second sentence, if properly interpreted, is dispositive in its favor. Additionally, the plaintiff claims that, at the very least, the "other insurance" clause contained in the defendant's policy is ambiguous with respect to the extent of its coverage of an insured who, while a pedestrian, is injured by an uninsured motor vehicle. The plaintiff contends, therefore, that the clause should be construed in his favor to allow him to seek full indemnification from the defendant. We agree that the clause is ambiguous under the circumstances of this case and, therefore, that it must be construed in favor of the plaintiff.

"Other insurance" clauses are used by insurance companies to establish the order of their obligation to provide coverage if an insured is entitled to seek uninsured motorist benefits from multiple insurance policies. We have held that "[p]ublic policy is not violated when 'other insurance' clauses are used for the purpose of establishing the order of payment between insurers." *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn 779, 785, 606 A.2d 990 (1992). There are three generally accepted types of "other insurance" clauses: escape, pro rata and excess. J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 9.1, p. 294. An escape clause is used by the insurer to eliminate its obligation to provide coverage if other applicable uninsured motorist coverage exists. Id. We have held that such clauses are invalid if used

to prohibit a claimant whose damages exceed the uninsured motorist coverage available under any one policy from stacking multiple policies in order to be fully indemnified. *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 453, 370 A.2d 1006 (1976). A pro rata clause provides that if other uninsured motorist coverage is available to a claimant, the insurer will be liable only for its share of the loss, which may be determined by calculating the proportion that the benefits available under its policy bears to the total of all benefits available under all applicable policies. J. Berk & M. Jainchill, supra, p. 294. An excess clause, which is the type of clause at issue in this case, provides that if any other uninsured motorist coverage is available, the insurer will be liable only if the claimant's loss exceeds the policy limit of the other available coverage. Id.

"It is the function of the court to construe the provisions of the contract of insurance. *Gottesman* v. *Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979). . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citations omitted; internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 583-

84, 573 A.2d 699 (1990). When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. See *Tremaine* v. *Tremaine*, 235 Conn. 45, 57, 663 A.2d 387 (1995); *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 175, 622 A.2d 545 (1993); *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 116, 584 A.2d 1172 (1991).

"It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . The premise behind the rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." (Citations omitted; internal quotation marks omitted.) *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 173-74.

We have previously interpreted an excess clause identical to the clause at issue in the present case. See *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, supra, 221 Conn. 779. In that case, the claimant was injured when the vehicle that she was driving was struck by an underinsured vehicle. The vehicle driven by the claimant was owned by her father, who maintained a liability insur-

ance policy on his vehicle through Aetna. Id., 781. At the time of the accident, the claimant lived with her sister and brother-in-law and was covered, as a resident relative, under their automobile liability insurance policy issued by CNA Insurance Company (CNA). Id. After the claimant exhausted the underinsured driver's liability insurance benefits, she brought claims against Aetna and CNA pursuant to the underinsured motorist provisions of each policy. Id. Both policies contained excess clauses that were identical to those at issue in this case. Id., 782.

The claims were arbitrated and "[t]he arbitration panel concluded that the insurer providing coverage on the vehicle involved in the accident was primary, and that the insurer providing coverage as a result of the claimant being a resident relative of the named insureds' household was excess." Id. Consequently, the panel determined that Aetna's coverage had to be exhausted before CNA would become obligated to pay underinsured benefits. Id. Thereafter, the trial court vacated the arbitration award and concluded that both policies should be considered primary and, therefore, the losses should be allocated between them. We reversed the judgment of the trial court, concluding that the policies did not contemplate the risk of loss equally and thus the loss should not have been allocated between the insurers. Id., 787. We reasoned that, although each excess clause provided that its policy would be excess if the claimant were injured in a vehicle that the named insured did not own, the Aetna policy, by its own terms, did not envision being excess under the facts because the claimant was injured in a vehicle that was, in fact, owned by the named insured, specifically, the claimant's father. Id. We concluded that "[t]he policies themselves, therefore, dictate that we hold that the Aetna underinsured motorist coverage be primary and that the CNA underinsured motorist coverage be excess." Id.

In *Aetna Casualty & Surety Co.*, we stated that "if a careful reading of the language of the policies in their entirety reconciles any conflict or ambiguity that may arise when identical or similar 'other insurance' clauses exist, and if the enforcement of the clauses would not produce adverse consequences for the insured, then the clauses should be enforced as written." Id., 785. In applying that test, we concluded that the second sentence of the excess clause was the "essential clause" to be construed and that it was unambiguous because it clearly indicated that the insurer had contemplated that its policy "would be excess in [the situation] where the [claimant] was injured in a vehicle [the named insured did] not own." (Internal quotation marks omitted.) Id., 787. In the present case, however, a careful reading of the excess clause does not provide a clear and unambiguous indication of available coverage.

Each party claims that the first sentence of the excess clause, if properly interpreted, is dispositive in its favor.[7] We disagree with both interpretations.

The plaintiff claims that the first sentence is plain and unambiguous and must be read to mean that if payment has not been made under "other applicable similar insurance," regardless of the reason, the plaintiff is entitled to seek full indemnification under the defendant's policy. The plaintiff argues that the second sentence of the excess clause, therefore, is not operative if a claimant, to whom no actual payment has been made under another applicable similar policy, is seeking benefits under this policy. There is nothing in the language of the policy to support the plaintiff's contention. Such an interpretation would frustrate public policy. As the defendant points out, it would serve as a disin-

---

[7] The first sentence of the excess clause provides: "If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance."

centive for insurers to utilize arbitration provisions in their policies. In support of this claim the defendant asserts that the inclusion of the arbitration clause in its policy, as compared to the suit clause contained in the Aetna policy, made it the easier and thus preferable policy under which the plaintiff could seek full indemnification. Presumably, any difference among available policies would hereafter be scrutinized by a claimant or his attorney in an effort to determine which policy provided preferable treatment and, therefore, from which policy he would seek full indemnification. Consequently, this would provide a general incentive to insurance companies to make their policies the more difficult, and thus least preferable, policies under which a claimant, who has available other applicable similar insurance, might elect to seek benefits.

The defendant claims that the first sentence provides notice to the plaintiff that the policy is attempting to prorate its obligation to pay for the plaintiff's loss among its policy and other applicable similar insurance policies. The defendant argues that we should read the first sentence to embody a scheme whereby, if there is other applicable similar insurance, the defendant's policy will pay only its prorated share of the total benefits available under all applicable policies. Essentially, the defendant argues that the phrase "which would duplicate any payment made" should be interpreted to mean "which would duplicate any payment which would be made if the claimant had sought benefits from all applicable policies." This interpretation is unsupported by the language of the first sentence, when read either by itself or in the context of the excess clause as a whole.

Our interpretation of the first sentence of the excess clause is neither so restrictive nor so expansive. The first sentence must be read in the context of the excess clause as a whole and, as a result, our interpretation

of its meaning must be informed by the second sentence. We conclude that the first sentence expresses the rule that a claimant who has already recovered for a loss is prohibited from recovering again for the same loss.[8] Upon reading this sentence, a claimant is put on notice that if he has already received payment for his damages under another insurance policy, he may not seek duplicate payment under this policy. In the case in which payment has *not* been made for damages under other similar insurance, however, this sentence does not address the insurer's obligation to provide coverage among all applicable similar insurance. We conclude, therefore, that the first sentence of the excess clause neither prohibits a claimant from seeking full indemnification under the policy nor permits him to do so. Consequently, in order to determine the intent of the policy in that regard, we must look to the clause as a whole and read both sentences in that context.[9]

---

[8] It is conceivable that an insured might expect that because he has paid for two insurance policies, both of which provide coverage for his loss, he is entitled to complete recovery under both policies. In fact, we have noted that "the original reason for 'other insurance' clauses was to prevent overinsurance and double recovery under fire and property insurance policies." *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, supra, 221 Conn. 783.

[9] If the excess clause consisted solely of the first sentence, the plaintiff may reasonably expect that he may seek full indemnification under the policy, because he is not prohibited from doing so. On the contrary, it is arguable that if that were the case, because the two policies, as expressed by their language, unambiguously contemplated the risk of loss equally, the plaintiff's loss should be allocated pro rata between the two policies, thereby obligating the plaintiff to seek payment from all applicable policies in order to be indemnified fully. As the defendant points out, the principle set forth by the Appellate Court in *Sacharko* v. *Center Equities Ltd. Partnership*, 2 Conn. App. 439, 479 A.2d 1219 (1984), supports such a conclusion. In *Sacharko*, the Appellate Court stated that "[w]here two policies contemplate the particular risk equally, liability will be prorated based on the total policy limits." Id., 447. Similarly, the defendant claims that even if we hold that its excess clause is ambiguous and conclude, therefore, that the clause did not apply, the plaintiff's loss should nevertheless be allocated between the defendant and Aetna because Aetna's excess clause is equally ambiguous and, as a result, its policy provides the same level of uninsured motorist coverage as the defendant's.

The second sentence addresses the intent of the parties regarding the order of obligation to provide coverage when other similar insurance policies are applicable.[10] Each party argues, in the alternative, that the second sentence of the excess clause, if properly interpreted, is dispositive.[11] Additionally, the plaintiff argues that the second sentence is ambiguous and should be construed in his favor. We agree that the second sentence is ambiguous and, therefore, construe it in the plaintiff's favor so as to allow him to recover fully for his loss under the defendant's policy.

The plaintiff contends that the language of the second sentence clearly indicates that the policy does not apply to the situation in which a claimant is injured while a pedestrian, because, in such a case, he would not be injured in "a vehicle you do not own," in other words, not owned by the named insured. See footnote 4. The defendant contends that the excess clause is applicable in this case because "a vehicle you do not own" refers

We have not yet decided a case in which the validity of the proposition set forth in *Sacharko* has been considered, and we need not do so now. Notwithstanding the question of whether a claimant's loss should be prorated between two available policies that *unambiguously* contemplate a particular risk equally, we will not extend the rule set forth in *Sacharko* to apply in the present case because to do so would require us to conclude, solely from the fact that the policies are equally ambiguous, that the two policies "contemplate the particular risk equally." Id. In construing an insurance contract we must look to the reasonable expectations of the parties as disclosed by the provisions of the policy and, in the present case, we are not prepared to impute to the plaintiff such an elaborate comparison and analysis of the two policies. As we stated in *Ceci*, another case in which we were confronted with an ambiguous insurance provision, "[h]aving caused the problem, the defendant cannot now ignore it." *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 176.

[10] We agree, therefore, with our prior conclusion in *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, supra, 221 Conn. 787, that this sentence is the "essential language to be construed in the [policy]."

[11] The second sentence of the excess clause provides: "However, any insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance."

to any vehicle that was involved in the accident; in this case the tortfeasor's vehicle. We are persuaded by neither proffered construction.

In *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.,* supra, 221 Conn. 787, we held that the language "any insurance we provide with respect to a vehicle you do not own" clearly indicated that "both Aetna and CNA contemplated in their respective 'other insurance' clauses that the policy issued by each would be excess in situations where the covered person was injured in a vehicle 'you' do not own." In light of this specific construction of the operative language and the fact that such a construction might be limited to the specific circumstances as presented in *Aetna Casualty & Surety Co.,* we conclude that the defendant's excess clause is ambiguous as to coverage in the situation with which the plaintiff in the present case was confronted, namely, whether the policy contemplates providing excess coverage when a claimant, while a pedestrian, has been injured by an uninsured motorist. Accordingly, construing the clause in favor of the plaintiff, and in conformance with an insurance consumer's objectively reasonable expectation, we hold that the clause does not apply when a plaintiff is injured while a pedestrian. Consequently, because the clause does not apply in this situation, the clause did not create an obligation on the plaintiff's part to pursue a claim against Aetna in order to be indemnified fully.

Our decision does not prevent insurers from utilizing "other insurance" clauses that clearly and unambiguously create a duty on the part of the insured to seek benefits under all applicable policies in order to be indemnified fully. As the plaintiff conceded during oral argument, it would not be against public policy to enforce an insurance contract that included a pro rata "other insurance" clause if the provision were clear and unambiguous.

The judgment is reversed, and the case is remanded with direction to grant the plaintiff's application to vacate the arbitration award, and to remand the case to the arbitrator for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.