### WESTERN WORLD INSURANCE COMPANY, Plaintiff,

v.

Katrina V. PETERS, Executrix of the Estate of John E. Peters; Town of Greenwich, Connecticut; John Margenot, Jr.; Kenneth Moughty; Roger Wachnicki; and John Campbell, Defendants.

No. 3:95CV2135(JBA).

United States District Court, D. Connecticut.

Sept. 30, 1997.

John W. Lemega, Daniel P. Scapellati, Kathleen Anne St. Onge, Halloran & Sage, Hartford, CT, for Plaintiff.

Michael Anthony Pignatella, Trager & Trager, P.C., Fairfield, CT, Robert A. Lacobelle, Byrne & Lacobelle, Trumbull, CT, for Defendant Katrina V. Peters.

Joyce H. Young, Law Dept., Greenwich, CT, F. Timothy McNamara, Hartford, CT, for Defendants Town of Greenwich, John Margenot, Jr., Kenneth Moughty, Roger Wachnicki, John Campbell.

Laura E. Evangelista, Philip J. Walsh, Joan M. Gilbride, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Sedgwick James of CT, Inc.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT [DOCS. 46, 49]

ARTERTON, District Judge.

This case arises from a dispute over coverage under a "Law Enforcement Officers Liability Policy" issued by plaintiff, Western World Insurance Company ("Western World"), to defendant Town of Greenwich, Connecticut ("Town"). Western World seeks a declaratory judgment that it is not obligated under that policy either to defend or indemnify the Town or the individual defendants, First Selectman of the Town, John Margenot, the Town's Chief of Police, Kenneth Moughty, Greenwich Police Detective Roger Wachnicki and Greenwich Police Detective John Campbell, (collectively the "Town defendants"), for any liability they may incur as a result of an action filed by Katrina V. Peters, Executrix for the estate of John E. Peters. The parties have cross-moved for summary judgment.

### FACTUAL BACKGROUND

The following is the undisputed factual background of the case. Western World issued a Law Enforcement Officer's Liability policy to the Town, with effective dates of September 1, 1992 to September 1, 1993. By complaint dated August 2, 1995, Katrina V. Peters instituted an action in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk against the Town, Margenot, Moughty, Wachnicki and Campbell, alleging negligence, negligent supervision and violation of John E. Peters' due process rights under the Connecticut Constitution.

Briefly, the complaint in the underlying action alleges that the Ms. Peters' decedent, John E. Peters, and his son Dirk Peters suffered a course of harassment and threats directed at them by Andrew Wilson from April 1993 to August 1993, and that on August 5, 1993, John E. Peters was violently assaulted and killed by Wilson. The underlying complaint further alleges that Wilson's allegedly harassing behavior was repeatedly

made known to the Greenwich Police Department who negligently failed to act on the information, resulting in the death of John E. Peters. Specifically, Ms. Peters' complaint alleges negligence against all defendants in Count One, breach of the common law duty of law officials against all defendants in Count Two, failure to supervise against Margenot and Moughty in Count Five, and violation of the State of Connecticut Constitution against all defendants in Count Seven. Counts Three, Four, Six and Eight allege statutory indemnification by the Town for the individual defendants.

The Town defendants forwarded the underlying lawsuit to Western World for defense under the Law Enforcement Officers Liability policy. By letter to the Town, Western World denied coverage under the policy and informed the Town that it would not defend it in the underlying action. The Town has brought a third party complaint against insurance broker Sedgwick James, who the Town alleges it engaged to procure sufficient law enforcement insurance coverage to cover the type of claim brought in the underlying Peters action. The Town alleges that if the Court finds in the declaratory judgment action at the policy at issue does not provide· coverage for the Town, it is a direct result of Sedgwick James' failure to uphold its duties and responsibilities in accordance with the agreement between it and the Town to provide an insurance policy for law enforcement liability which covers such allegations as made in the underlying Peters complaint.

### STANDARD

■ In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, "the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995); *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986). If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, all reasonable inferences and any ambiguities must be drawn in favor of the non-moving party. *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

### DISCUSSION

■ The parties agree that there are no disputes of material fact in this case, and that the Court may interpret the policy in order to determine the existence of coverage as a matter of law. Indeed, "[i]t is the function of the court to construe the provisions of the contract of insurance." *O'Brien v. United States Fidelity and Guaranty Co.*, ·235 Conn. 837, 842, 669 A.2d 1221 (1996) (citing *Gottesman v. Aetna Ins. Co.*, 177 Conn. 631, 418 A.2d 944 (1979)). Under Connecticut law, the terms of an insurance policy are to be construed according to the general rules of contract interpretation. *Heyman Associates No.1 v. Insurance Company of the State of Pennsylvania*, 231 Conn. 756, 768–70, 653 A.2d 122 (1995). The determinative question is the intent of the parties. as to what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy. *O'Brien*, 235 Conn. at 842, 669 A.2d 1221. "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." *Heyman*, 231 Conn. at 770, 653 A.2d 122. When terms

of an insurance contract are, without violence, susceptible of two equally responsible interpretations, the interpretation sustaining the claim and covering the loss must be adopted. *Id.* Further, the policy must be construed as laypeople would understand it and not according to the interpretation of sophisticated underwriters. *O'Brien,* 235 Conn. at 843, 669 A.2d 1221. However, although "ambiguities are to be construed against the insurer, when the language is plain no such construction is to be applied." *Heyman,* 231 Conn. at 770, 653 A.2d 122. Moreover, "courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Id.*

The gravamen of Western World's denial of coverage is that the policy provides coverage for bodily injury claims solely for circumstances involving an arrest, and that in the absence of an arrest, an attempted arrest, or resisting an arrestee's attempt to escape therefrom, the liability policy does not provide coverage to the Town defendants. An insurer's duty to defend is determined by the allegations in the complaint against its insured:

> The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability ... It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint .... Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend.

*Flint v. Universal Machine Co.,* 238 Conn. 637, 646–47, 679 A.2d 929 (1996) (alterations in original). Western World contends that the allegations in the underlying complaint do not fall within the policy's coverage, and therefore it has no duty to defend the Town defendants against that action. Western World refers to the "Insuring Agreements" and "Definitions" sections in support of its argument of non-coverage.

The provision entitled "Insuring Agreements" reads:

> The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of negligent acts, errors, or omissions of the insured as follows:
>
> Coverage A—Personal Injury
>
> Coverage B—Bodily Injury
>
> Coverage C—Property Damage
>
> to which this policy applies, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or bodily injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient but the company shall not be obligated to pay and clam or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment or judgments or settlements.

The "Definitions" at issue provide:

> "Bodily Injury" means bodily injury, sickness or disease sustained by any person accidentally caused by any act of the insured in making or attempting to make an arrest, while under arrest, or while resisting an overt attempt to escape by a person under arrest. No act shall be deemed to be or result in bodily injury unless committed in the regular course of duty by the insured.
>
> "personal injury" means false arrest, erroneous service of civil papers, false imprisonment malicious prosecution, libel, slander, defamation of character, violation of property rights, and assault and battery, if committed while making or attempting to make an arrest, while under arrest, or while resisting an overt attempt to escape by a person under arrest. No act shall be deemed to be or result in personal injury unless committed in the regular course of duty by the insured.
>
> "property damage" means physical injury to tangible property sustained or incurred

incidental to those activities for which this policy affords coverage under coverages "A" and "B."

Western World contends that the limitations in the "Insuring Agreement" and "Definition" sections of the policy, when read together, clearly and unambiguously state that coverage for bodily injury is provided in arrest situations only, and that the allegations in the underlying complaint, alleging negligent failure to arrest, do not fall within the parameters of the policy's coverage. The Town defendants argue that a reasonable interpretation of the policy language is that the phrase in the Insuring Agreements section that refers to "negligent acts, errors or omissions," in conjunction with the definitional phrases referring to any act of the insured making or attempting to make an arrest, provides that the Insuring Agreement encompasses liability arising out of a failure, or omission, in making or attempting to make an arrest, as alleged in the underlying complaint.

In support of its policy construction, Western World cites *Western World Insurance Co. v. City of Tuscumbia*, 612 So.2d 1159 (Ala.1992) in which the Supreme Court of Alabama construed the same policy language. In *Tuscumbia*, city police officers responded to a call that an individual was causing a disturbance. That individual, Estes, agreed to be transported to the police station so that he could telephone someone to give him a ride. *Id.* at 1160. At no time was the individual placed under arrest. *Id.* When Estes could not obtain a ride, he agreed to be transported to the municipal limits by the officers, and indicated he could walk home from there. *Id.* While walking home, Estes was struck by a vehicle. *Id.* Estes sued the City of Tuscumbia, alleging that his injuries resulted from his negligent release by the police officers. The City of Tuscumbia forwarded the complaint to its liability insurance carrier, Western World, and requested that the carrier defend and indemnify the City under the "Law Enforcement Officer's Liability Insurance Policy" issued to the City. Western World denied coverage. *Id.*

The language at issue in the "Law Enforcement Officer's Liability Insurance Poli-

cy" in *Tuscumbia* is exactly the same as that at issue in the Town's policy. The Alabama Supreme Court concluded that the policy was unambiguous as written, and that:

[I]n order for bodily injury to be covered under the terms of the policy, it must have been caused by the City's police department in one of three ways: 1) by an act of one of the police officers in making or attempting to make an arrest; 2) by an act of one of the police officers while a person is under arrest; or 3) by an act of one of the police officers while a person under arrest is trying to escape.

*Id.* at 1161. The *Tuscumbia* court concluded that no coverage under the policy was provided for bodily injury to an individual who has been released by police and is injured later by a third party who has no affiliation with the City's police department.

■ Here, reading the definitions of "bodily injury" and "personal injury" in conjunction with the "Insuring Agreement" section, and according the language in those provisions its natural and ordinary meaning, the Court concludes that it is unambiguous that coverage for bodily injury is provided in arrest situations only, i.e., that coverage was available only for injuries accidentally caused by any act of the insured in making or attempting to make an arrest, while under arrest, or while resisting an overt attempt to escape by a person under arrest. Such a reading of these sections makes clear that the "negligent acts, errors, or omissions" referred to in the "Insuring Agreements" section refer to those negligent acts, errors or omissions made once the process of making an arrest, or attempting to make an arrest, is underway. Although the definitional sections provide that "no act shall be deemed to be or result in personal injury unless committed in the regular course of duty by the insured," that language is limited by the preceding language to that part of the insureds' regular duties consisting of actually making or attempting to make an arrest.

Additionally, this construction is supported by the policy definition of "incident." "Incident" is defined as:

the initial act or acts attributable to a specific alleged crime or complaint result-

ing in *action by the insured*, which crime or complaint can be fixed as to time and place and any subsequent acts which directly relate to or arise out of the original crime or complaint. (emphasis supplied). Thus, coverage for each "incident" under the limits of liability provision (Condition (a)(1)) unambiguously provides that the initial act(s) attributable to a specific crime or complaint must result in "action by the insured." The Court may not distort policy provisions so as to accord them a meaning other than that evidently intended by the parties, *see Heyman*, 231 Conn. at 770, 653 A.2d 122, and thus declines to construe "action" to mean "inaction."

The underlying complaint does not allege that an arrest was made or was being attempted, or that injury occurred while a person was trying to escape from arrest. The allegations in the underlying complaint are actually to the contrary, alleging that defendants failed to act—the gist of the underlying complaint is that the Town defendants were negligent, and violated John E. Peters' state constitutional right to due process, by failing to arrest, or attempt to arrest, Andrew Wilson. Therefore, under the plain and unambiguous terms of the policy, given their ordinary meaning, because the underlying complaint does not allege an injury to John E. Peters which was "caused by any act of the insured in making or attempting to make an arrest, while under arrest, or while resisting an overt attempt to escape by a person under arrest," the Court concludes that coverage for Ms. Peters' underlying action is not available to the Town by the terms of this policy.

The Town defendants contend that many exclusions exist in the policy which are unrelated to any arrest-related situation, from which the Town defendants argue that a broad coverage must have been intended (or the exclusions would be unnecessary). However, the language of these exclusions is equally applicable to narrow actual arrest situations, such as where the Town enters into a contract with a neighboring municipality to provide police services and an arrest related incident occurs for which Town officers or officials are then sued, *see* Exclusion (c), and thus the language of these exclusions does not undermine the unambiguous coverage limitation language.

The Town defendants also submit evidence outside the four corners of the insurance policy in an effort to demonstrate that coverage should be afforded to the Town under the Policy. Specifically, the Town defendants submit deposition testimony purporting to demonstrate that the policy covers civil rights claims, documents purporting to demonstrate that Western World undertook defense of another claim under the policy which did not involve an arrest, and a policy exclusion presently used by Western World in certain markets which expressly excludes coverage for failure to arrest and detain. However, the parol evidence rule precludes the use of evidence outside the four corners of an integrated contract to vary or contradict that contract's terms. *Heyman*, 231 Conn. at 780, 653 A.2d 122. "Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant." *Id.* However, such evidence may still be admissible to explain an ambiguity appearing in the instrument. *Id.* Where the Court has concluded that the policy language unambiguously limits coverage to situations where an arrest has been made or attempted, the Town defendants' evidentiary submissions are irrelevant as they seek to contradict the policy's unambiguous terms. *See Heyman*, 231 Conn. at 780, 653 A.2d 122 (where court found that clear and unambiguous language of absolute pollution exclusions in plaintiff's policies excluded coverage for a fuel oil spill, parole evidence regarding meaning of "pollutant" was inadmissible and irrelevant). In short, although parole evidence can be used to resolve an ambiguity in a contract, it clearly cannot be used to create one.

Therefore, because the plain and unambiguous terms of the policy provide coverage only for acts of the insured in making or attempting to make an arrest, while under arrest, or while resisting an overt attempt to escape by a person under arrest, and because the underlying complaint does not allege that the Town defendants ever made or attempted to make an arrest which resulted in injury

to John E. Peters, the Court concludes that coverage is not available to the Town under this policy for Ms. Peters' underlying action against the Town defendants. Accordingly, Western World's Motion for Summary Judgment [doc. 46] is GRANTED and the Town defendants' Motion for Summary Judgment [doc. 49] is DENIED.

IT IS SO ORDERED.