MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGEMENT
The issue presented by these motions for summary judgment is whether a third party's act of obtaining insurance on an insured's vehicle triggers the automatic termination provision of the insured's automobile insurance policy. The determination of CT Page 9309 the court is that a third party cannot unilaterally terminate an insured's automobile insurance policy unless the third party is an agent of the insured. Therefore, the present insured's policy did not automatically terminate upon the acquisition of other insurance by a third party.
 BACKGROUND
The present action is one seeking a declaratory judgment to determine the parties' respective duties to defend and indemnify. The plaintiff, American Express Assurance Company ("AMEX"), sold automobile insurance to the insured, Elijah Bethune. The policy was effective from September 28, 1995 through March 28, 1996. One of the vehicles covered by this policy was a 1983 Buick Electra (Electra).
On December 13, 1995, the insured's Electra was involved in an, automobile accident while being driven by the insured's grandson, Michael Bethune.[2] Michael Bethune was driving the Electra with the permission, and for the purposes of, his aunt, Gloria Bethune. Prior to this accident, the insured had allowed his daughter, Gloria Bethune, to use the Electra. Gloria Bethune indicated to her father that she would obtain insurance on the Electra. Gloria Bethune did obtain insurance on the Electra from the defendant, AIG Insurance Company; however, the insured also maintained his insurance on the automobile.
On or about February 2, 1996, a civil action was commenced against the insured and his grandson by the driver and passenger of the automobile involved in the accident allegedly caused by Michael Bethune. (See Complaint, Plaintiff's Exhibit A.) Demand was made on AIG Insurance Company to provide a defense and indemnification to Michael Bethune. (Declaratory judgment complaint, ¶ 12.) AIG denied that it had a primary obligation to defend or indemnify, and claimed that its policy provided excess, not primary, coverage. (Declaratory judgment complaint, ¶ 13.)
On January 5, 1998, the plaintiff in the present action filed a motion for summary judgment along with a memorandum of law and supporting documentation. The plaintiff moves for summary judgment on the ground that the policy it issued "was cancelled by substitution prior to the date of the accident alleged in the underlying complaint." (Motion for Summary Judgment, p. 1.) The plaintiff asserts that the "AIG policy and not the American CT Page 9310 Express Assurance Company policy . . . provides coverage to Michael Bethune." (Motion for Summary Judgment, p. 1.)
On February 23, 1998, AIG filed an objection to the motion for summary judgment. In addition, AIG filed a cross-motion for summary judgment on the ground that the acts of a third-party, not privy to the contract between the insurer and the insured, cannot effectively terminate an insurance policy. The defendant filed a memorandum of law and documentation, and incorporates the plaintiff's exhibits, to support both its objection and cross- motion for summary judgment.[3]
 DISCUSSION
Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp. , 233 Conn. 732, 751, 660 A.2d 810 (1995). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Id., 752. "[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to thenonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original.) Id.
"It is the function of the court to construe the provisions of the contract of insurance. . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citations omitted; internal quotation marks omitted.)O'Brien v. United States Fidelity Guaranty Co., 235 Conn. 837,842, 669 A.2d 1221 (1996).
The AMEX policy contains a cancellation by substitution CT Page 9311 clause. This clause states: "If other insurance is obtained onyour insured car, any similar insurance afforded under this policy for that car will cease on the effective date of the other insurance." (Plaintiff's Exhibit E, p. 18.) The plaintiff maintains that the cancellation by substitution clause is valid and enforceable. The plaintiff argues that Gloria Bethune's acquisition of insurance on her father's automobile was an act of substitution that cancels the AMEX policy.
In support of its argument, the plaintiff cites Majernicek v.Hartford Casualty Insurance Company, 240 Conn. 86, 688 A.2d 1330
(1997), which upheld an automatic termination clause similar to that at issue in the present case.[4] However, the plaintiff's reliance upon Majernicek is misplaced.
The issue in Majernicek was whether General Statutes §38a-343 (a) requires an insurer to provide written notice of cancellation when an insured triggers the policy's automatic termination clause by purchasing other insurance. Majernicek v.Hartford Casualty Insurance Company, supra, 240 Conn. 87-88. InMajernicek, unlike the present case, it was the insureds who purchased additional insurance on their automobile, thereby cancelling the prior existing insurance policy. (Emphasis added.)Id., 93. Our Supreme Court reasoned that "the [insureds] purchase of the [additional] policy was an affirmative act by the[insureds] unilaterally terminating the defendant's policy. . . ." (Emphasis added.) Id. Our Supreme Court further reasoned that the notice requirement of § 38a-343 (a) does not apply to those situations where an insured chooses to terminate a policy by his or her own action because such situations do not implicate the legislature's intent to eliminate the potentially harsh consequences that an insured faces if he or she is left unaware that the insurance company has cancelled his or her policy. Id., 93-94. Unlike those situations where an insurer cancels a policy without notice, when an insured on his or her own initiative purchases additional insurance, he or she has received an "adequate opportunity to procure other insurance." Id., 93.
In the present case, the plaintiff maintains that it was the insured's intent to allow his policy to terminate by the substitution of his daughter's insurance on the Electra. The plaintiff has submitted certified copies of the depositions of Elijah and Gloria Bethune in support of this assertion.
Noting a split of authority in the Superior Court as to CT Page 9312 whether deposition testimony, either uncertified or certified, may be considered for the purposes of a motion for summary judgment, our Appellate Court has observed that "we have not determined it to be improper for a trial court to consider deposition testimony in ruling on a motion for summary judgment."Schratwieser v. Hartford Casualty Ins. Co., 44 Conn. App. 754,756 n. 1, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340
(1997). The Appellate Court, in that case, also noted that the plaintiff had provided affidavits the afforded the court "a sufficient evidentiary basis for disposition of [the] appeal."Id.
Even if this court were to consider the depositions of Elijah and Gloria Bethune. questions of fact as to the intent of the insured and his daughter regarding insuring the Electra are evident. The deposition of Gloria Bethune tends to support the contention that she and her father agreed that she would insure the automobile. The deposition of Elijah Bethune, however, tends to negate such an assertion. Notably, Elijah Bethune stated that: "I told her that I had insurance on the car until — I don't know if it was April or May or something, and when the insuranceexpires I was going to let her take the car over. And she told me that would be fine." (Emphasis added.) (Plaintiff's Exhibit D, p. 12.) Also, Elijah Bethune testified that he was unaware as to whether his daughter had actually insured the Electra. (See Plaintiff's Exhibit D, p. 13.)
Notwithstanding that the proffered deposition testimony does not definitely resolve any material issue of fact in the plaintiff's favor, Gloria Bethune's unilateral act of obtaining insurance on her father's automobile, without, more, did not trigger the automatic cancellation clause. Gloria Bethune, a third-party not privy to the AMEX policy, could only terminate that policy if she was acting as her father's agent. "In harmony with general principles of agency law, the effectiveness of a cancellation by an agent for the insured depends entirely on the authority of the agent. . . . A cancellation made by a purported agent of the insured is effective only if the agent has the authority to cancel the policy." 2 G. Couch, Insurance (3d Ed. 1996) § 31:42, pp. 31-52, 31-53.
Here, the plaintiff has not submitted evidence that tends to show an agency relationship between Elijah and Gloria Bethune. Moreover, the language of the AMEX policy does not contemplate any rights or duties created for the benefit of third parties. CT Page 9313 Unless a policy expressly evidences the intent of the parties to include benefits and/or rights for third parties, the court should not assume that the parties intended to extend the parameters of the contract. Cf. Vagnini v. Hanover InsuranceCompany, Superior Court, judicial district of Fairfleld at Bridgeport, Docket No. 331860 (April 7, 1997, Thim, J.), quotingKnapp v. New Haven Road Construction Co., 150 Conn. 321, 325,189 A.2d 386 (1963) ("The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary . . . ").
"In addition, the terms of the policy may specifically provide for cancellation upon substitution, or the parties may otherwise mutually agree upon such method of cancellation. Where the original policy provides a method of effecting the substitution and cancellation, the parties must conform to that method in order to effectively substitute policies." 2 G. Couch, Insurance (3d Ed. 1996) § 31:129, p. 31-122; see Ins. Co. ofNorth America v. Protection Mutual Ins. Co., 939 F. Sup. 79, 84
(D.Mass. 1996) ("The overwhelming weight of modern authorit[ies] . . . hold that an insurance contract, like any other, cannot be terminated except by its terms, or by mutual consent").
The plaintiff reads the automatic termination clause regarding other insurance to mean that when Gloria Bethune, a third party, acquired insurance on the Electra, the insured's policy was cancelled. Such an interpretation ignores the other provisions that make up the complete agreement between the plaintiff and Elijah Bethune. For example, on top of the first page of the American Express policy, in large bold letters, the policy states: "Please Read This Policy Carefully . . . It is a contract between you and us." (Plaintiff's Exhibit E, p. 1.) At the bottom of the same page, under the heading of " Agreement," the policy states: "We agree with you, in return for your premium payment, insure you subject to the terms of this policy." (Emphasis in original.) Id. This language evidences the satisfaction of basic contract principles: mutual agreement predicated upon adequate consideration. This language does not reference third parties, or does it evidence an intent to include or cover third parties.
Turning to the second page of the policy, one finds the CT Page 9314 heading, in large bold print: "Definitions Used Throughout This Policy." (Plaintiff's Exhibit E, p. 2.) This section defines "we," "us" and "our" as American Express Assurance Company. The terms "you" and "your" are defined as "the Policyholder named in the declarations and spouse if living in the same household." The phrase "your insured car" means: "a) The car described in the declarations . . . [or] c) A car you acquire during the policy period. . . ." (Emphasis in original.) Id.
As seen by the express language of the insurance policy, the only mention of a third party was that of a spouse living in the same household as the insured. Gloria Bethune is not the spouse of Elijah Bethune and she was not an agent of Elijah Bethune. There is no evidence before the court that establishes that Elijah Bethune, the named insured, purchased additional insurance, as required under the policy to trigger the automatic termination clause, or communicated to the plaintiff that another insurance policy be substituted for the AMEX policy. Accordingly, based upon the policy's express language and the facts presented to the court at this time, the "other insurance" clause cannot be interpreted so as to provide a third party with the power to unilaterally terminate the contract between the plaintiff and Elijah Bethune.
 CONCLUSION
Based upon the reasoning above, the plaintiff's motion for summary judgment (#106) will be denied, and the defendant's cross-motion for summary judgment (#108) will be granted.
So ordered.
Michael Hartmere Judge of the Superior Court CT Page 9315
[2] The declaratory judgment complaint names three defendants. The first named defendant is AIG Insurance. The other defendants are Michael Bethune and Tyrone Weston. Michael Bethune and Tyrone Weston, the drivers involved in the automobile accident, are not implicated by the present motions. Therefore, any reference to "the defendant" in this memorandum refers to AIG Insurance.
[3] The defendant's objection and cross-motion for summary judgment are identical. Both the objection and cross-motion are premised on the argument that a third party cannot unilaterally terminate a contract to which they are not privy. Thus, the defendant's argument will be fully addressed by analyzing the plaintiff's motion for summary judgment.
[4] The automatic termination clause in Majernicek stated: "If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance." Majernicek v.Hartford Casualty Insurance Company, supra, 240 Conn. 88.