[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
In its fifth amended complaint, the plaintiff, Agency Rent-A Car, alleges the following facts. The defendant, ITT Hartford Accident and Indemnity Company, entered into an automobile insurance contract with Sonia Williams, which provided coverage for certain "insureds" against claims resulting from an automobile accident, to a limit of $20,000 per person and $40,000 per occurrence. The insurance policy also provided that the defendant would defend in legal proceedings brought against the insured resulting from any claim made while the policy was in effect.
While the policy was in effect, a vehicle owned by the plaintiff and operated by Linden Higgins was involved in a motor vehicle accident with a motorcycle. The injured party subsequently brought suit against the plaintiff and Higgins, which eventually settled. Despite demand made by the plaintiff, the defendant refused to indemnify or defend its insured in that suit. The plaintiff claims that $20,000 of the settlement was the defendant's responsibility and brings its complaint to recover this amount, together with punitive damages, attorney's fees and interest.
The five counts of the complaint sound in breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Insurance Practices Act (CUIPA), codified at General Statutes § 38a-816, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), codified at General Statutes § 42-110b. The CUIPA and CUTPA counts have since been withdrawn.
The defendant filed a motion to dismiss the complaint on the ground that the court lacks subject matter jurisdiction. In an accompanying memorandum of law, the defendant asserts that the plaintiff lacks standing to make a claim under the insurance policy. CT Page 11173
Because the defendant's motion to dismiss has yet to be decided by the court and is incorporated into its trial brief, the issue of whether the court has jurisdiction is the first issue to be decided. This decision, in turn, will determine whether the plaintiff is entitled to recover under the relevant insurance policy. The court will then address the claims raised by the plaintiff in its complaint.
ISSUES
This case presents the following issues: (1) Whether the court lacks subject matter jurisdiction over the plaintiff's complaint and should, therefore, dismiss the action; (2) if the court has subject matter jurisdiction, whether the plaintiff is entitled to recover under the defendant's insurance policy; and (3) if the plaintiff is entitled to recover under the defendant's insurance policy, whether the defendant is liable for breach of contract, and bad faith.
LAW AND CONCLUSIONS
I. Defendant's Motion to Dismiss
In its motion to dismiss, the defendant claims that: 1) the plaintiff fails to qualify as an insured person under the relevant policy; 2) any rights of the insured under the policy could not have been assigned to the plaintiff without the defendant's consent; 3) the plaintiff cannot bring the defendant into any action to determine the liability of an insured; 4) the plaintiff has not alleged that the claimed obligation has been finally determined by judgment after trial; and 5) the plaintiff has not obtained written consent of the defendant that the defendant has an obligation to pay. The defendant argues, therefore, that the plaintiff fails to have standing to assert a claim under the policy, thus, the court lacks subject matter jurisdiction over the plaintiff's cause of action.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914
(1991). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the CT Page 11174 proceedings in question belong." (Internal quotation marks omitted.) Grant v. Bassman, 221 Conn. 465, 470, 604 A.2d 814
(1992).
Because subject matter jurisdiction addresses the basic competency of the court, it can be raised by any of the parties, or the court can raise it sua sponte at any time. Daley v. Hartford,215 Conn. 14, 27-28, 574 A.2d 194, cert. denied, 498 U.S. 982,111 S.Ct. 513, 112 L.Ed.2d 525 (1990). "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody, N.E., Inc.,239 Conn. 93, 99, 680 A.2d 1321 (1996).
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action. . . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . Standing is not a technical rule intended to keep aggrieved parties out of court. . . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . The requirement of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer. . . ." (Citations omitted; internal quotation marks omitted.) State v. Anonymous, 237 Conn. 501, 510,680 A.2d 956 (1996).
The following facts, asserted by the plaintiff in its trial brief, are pertinent to the plaintiff's claim that it is covered under the relevant insurance policy. At the time of the accident, Linden Higgins was Sonia Williams' fiance. The relevant insurance policy was issued to Sonia Williams. The defendant has stipulated that Higgins rented the vehicle involved in the accident from the plaintiff to temporarily replace Williams' covered automobile while it was being repaired. The plaintiff claims coverage under the policy, which provides coverage for a replacement vehicle, as well as the operator and owner of a covered vehicle.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and CT Page 11175 enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The policy words must be accorded their natural and ordinary meaning. . . . Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [C]onstruction of a contract of insurance presents a question of law for the court. . . ." (Citations omitted; internal quotation marks omitted.) Hansen v. Ohio CasualtyInsurance Company, 239 Conn. 537, 542-43, 687 A.2d 1262 (1996).
The defendant's first argument, that the plaintiff lacks standing as an insured party under the terms of the policy, is a question of law and requires the court to look to the words of the policy.
The defendant's insurance policy is attached to its motion to dismiss and provides, in relevant part:
FORM A-5151-0 PERSONAL AUTO POLICY — Definitions
J. Your covered auto means:
1. Any vehicle shown in the Declarations. . . .
 4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
 a. breakdown; d. loss; or b. repair; e. destruction. c. servicing;
Item four of this portion of the insurance policy unambiguously provides that the automobile Higgins rented from the plaintiff as a substitute for Sonia Williams' automobile while it was being repaired is a covered auto. The policy further provides:
PART A — LIABILITY COVERAGE INSURING AGREEMENT
A. We will pay damages for bodily injury or property damage CT Page 11176 for which any insured becomes legally responsible because of an auto accident. . . .
B. Insured as used in this Part means:
 1. You or any family member for the ownership, maintenance or use of any auto or trailer.
2. Any person using your covered auto.
 3. For your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part. . . . (Emphasis added.)
This portion of the policy unambiguously provides that Linden Higgins, as a person using Sonia Williams' covered auto (B.2), was an insured under the policy. The plaintiff, as an organization with legal responsibility for the acts of a person for whom coverage is afforded (i.e., Linden Higgins under B.2), was also an insured under the policy.[1]
In support of this conclusion of law are the facts alleged in the parties' pleadings and the supporting affidavits, and the joint stipulated facts. "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light. . . ." (Citation omitted; internal quotation marks omitted.) Savage v. Aronson, 214 Conn. 256, 264,571 A.2d 696 (1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however . . . the motion is ; accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue. . . ." (Citation omitted; internal quotation marks omitted.) Barde v. Board of Trustees,207 Conn. 59, 62, 539 A.2d 1000 (1988). Against this background, the court, looking at the documents, notes that the defendant, in its own internal determination of its liability, reached the same conclusion of law under the same reasoning as this court reached above, concluding that the plaintiff was an insured under the terms of the policy.[2]
The defendant argues that under the terms of the policy, the plaintiff has no standing as an assignee of the insured's rights under the policy, nor any rights to bring the defendant into any CT Page 11177 action to determine the liability of an insured under the policy. In light of this court's conclusion that the plaintiff is an insured under the policy at issue, these arguments fail.
Additionally, the defendant's claim that it is not liable to the plaintiff is based on Part F of the General Provisions of the policy which bar legal actions against the defendant until: "1. We agree in writing that the insured has an obligation to pay; or 2. The amount of that obligation has been finally determined by judgment after trial." The defendant argues that the plaintiff has not alleged that the claimed obligation has been finally determined by judgment after trial and that the plaintiff has not obtained written consent of the defendant that the defendant has an obligation to pay. In its argument and in the cases submitted in support thereof, the defendant indicates that this provision is directed at third parties attempting to bring suit directly against an insurer without a prior determination of liability of the insurer or liability or fault of the insured. However, this is not clearly stated in the language of the provision, the language of the provision is open to interpretation and construction by this court. As previously discussed, "[i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . ." (Citation omitted.) O'Brien v. United States Fidelity Guaranty Co., 235 Conn. 837, 843 669 A.2d 1221 (1996). "If . . . the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Citation omitted; internal quotation marks omitted.) PeerlessInsurance Co. v. Gonzalez, 241 Conn. 476, 482, (1997). "[T]he proper construction of a policy of insurance presents a question of law. . . ." (Citation omitted.) Id., 483. The provision in Part F cannot be construed as a bar to the insured to instigate legal action against the insurer for breach of contract when the insurer does not perform under the terms of the policy. Because the court has determined herein that the plaintiff is an insured party under the policy in question, this argument fails as the provisions are inapplicable to the plaintiff.
Accordingly, because the court finds that the plaintiff is an CT Page 11178 insured under the applicable insurance policy, the court further finds that the plaintiff has standing to pursue its claim against the defendant for coverage under the policy and the court has jurisdiction to hear the plaintiff's cause of action. Therefore, the court denies the defendant's motion to dismiss.
II. Plaintiff's Recovery Under the Insurance Policy
The defendant, in its trial brief, argues that, even if the court finds that the plaintiff is an insured under the relevant insurance policy, the defendant has no obligation to make payments towards a judgment or settlement until the plaintiff exhausts its own assets and other insurance coverage applicable to the vehicle involved in the accident. The plaintiff, in its trial brief, argues that the defendant's policy is primary, even though the policy included an "excess" insurance clause.
Excess or "`[u]mbrella policies serve an important function in the industry. In this day of uncommon but possible, enormous verdicts, they pick up this exceptional hazard at a small premium.'" Mass. v. United States Fidelity Guaranty Co.,222 Conn. 631, 639, 610 A.2d 1185 (1992), quoting 8C J. J. Appleman, Insurance Law and Practice (1981) § 5071.65, p. 107.
The following facts in the present case are pertinent to aid the court in deciding the issue of which insurance policy is primary. The plaintiff is self-insured, as provided by General Statutes § 38a-371.[3] (Exhibits 6 and 9.) When the subject accident occurred, the plaintiff carried an excess automobile liability policy with Lexington Insurance Company. (Exhibit 8.) This policy provided that the plaintiff retained a bodily injury or property damage limit of $500,000 per occurrence. Lexington's limit of liability was $4,500,000, subject to an annual aggregate deduction of $500,000 to be borne by the plaintiff. (Exhibit 8.)
Turning to the language of the relevant insurance policies to determine coverage, the defendant's policy provides:
 Form A-4-4681-2 Amendment of Policy Provisions — Connecticut I. D. The Other Insurance provision is replaced by the following:
OTHER INSURANCE
If there is other applicable liability insurance we will pay CT Page 11179 only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance unless it is a vehicle insured under a policy affording coverage to a named insured engaging in the business of selling or repairing motor vehicles. . . . (Emphasis added.)
Under PART A — LIABILITY COVERAGE INSURING AGREEMENT (where the court previously found that the automobile involved in the accident was a covered auto), the insurance policy provides:
OTHER INSURANCE
 If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. (Emphasis added.)
In their trial briefs, both parties correctly state that Connecticut's courts have yet to address the issue of whether an automobile liability policy is primary or excess when a covered vehicle is owned by an entity that is self-insured, which is the issue raised in the present case. Whether the plaintiff is covered by the defendant's policy turns on whether the plaintiff's self-insured retention of $500,000 falls within the meaning of "other insurance" as that term is defined in the defendant's insurance policy.
"Some state courts have confronted the issue [of whether self-insurance qualifies as "other insurance"] in other contexts, and there is somewhat of a split of authority. However, a majority of these courts have ruled that self-insurance is not insurance at all. See Aetna Casualty Surety Co. v. World Wide Rent-A-CarInc., 28 App. Div.2d 286, 284 N.Y.S.2d 807 (1967) (self-insurance is not insurance in automobile liability insurance context); AllstateInsurance Company v. Zellars, 462 S.W.2d 550 (Tex. 1970) (automobile liability self-insurance is not insurance); AmericanFamily Mutual Insurance Co. v. Missouri Power Light Co.,517 S.W.2d 110 (Mo. 1974) (en banc) (automobile liability self-insurance is not insurance); Eakin v. Indiana Intergovernmental Risk ManagementAuth., 557 N.E.2d 1095 (Ind.Ct.App. 1990) ("self-insurance is not CT Page 11180 insurance at all"); Glens Falls Insurance Co. v. ConsolidatedFreightways, 242 Cal.App.2d 774, 51 Cal.Rptr. 789 (1966) (automobile liability insurance); Iowa Contractors Workers' Compensation Groupv. Iowa Insurance Guaranty Ass'n., 437 N.W.2d 909 (Iowa 1989) (self-insured worker's compensation group not insurer); State FarmMut. Auto Ins. Co. v. Bogart, 149 Ariz. 145, 717 P.2d 449 (1986) (automobile self-insurance is not "other insurance"); State FarmMut. Auto Ins. Co. v. Universal Atlas Cement Co., 406 So.2d 1184
(Fla.Dist.Ct.App. 1981) (automobile self-insurance is not "other collectible insurance"); United Nat. Ins. Co. v. Philadelphia GasWorks, etc., 221 Pa. Super. 161, 289 A.2d 179 (1972) (certificate of self-insurance not an "insurance policy"); Universal UnderwritersInsurance Co. v. Marriott Homes Inc., 282 Ala. 231, 238 So.2d 730
(1970) (workmen's compensation self-insurance scheme is not insurance). But see Carolina Casualty Insurance Co. v. BelfordTrucking Co., Inc., 121 N.J. Super. 583, 298 A.2d 288
(App.Div. 1972), cert. denied, 63 N.J. 502, 308 A.2d 667 (1973) (self-insured trucking company primarily liable); Southern HomeInsurance Company v. Burdette's Leasing Service, Inc.,268 S.C. 472, 234 S.E.2d 870 (1977) (compulsory automobile self-insurance is "other collectible insurance"); State Farm Mut. Auto Ins. Co. v.Budget Rent-A-Car Systems Inc., 359 N.W.2d 673 (Minn.Ct.App. 1984) (automobile liability self-insurer is insurer). Furthermore, both a state supreme court and a state appellate court have ruled that self-insurance is not insurance on relatively similar facts.American Nurses Ass'n v. Passiac Gen. Hosp., 98 N.J. 83,484 A.2d 670 (1984); Physicians Insurance Company v. Grandview Hospital andMedical Center, 44 Ohio App.3d 157, 542 N.E.2d 706 (1988)." WakeCounty Hospital System, Inc. v. National Casualty Company,804 F. Sup. 768, 774 (E.D.N.C. 1992), aff'd, 996 F.2d 1213 (4th Cir. 1993) (unpublished decision).
In support of its position that the plaintiff's certificate of self-insurance is the functional equivalent of a policy of insurance, the defendant in the present case cites Ryder/P.I.E.Nationwide v. Harbor Bay, 575 A.2d 416 (N.J. 1990). That case involved the "obligation to provide coverage for an additional insured in a loading and unloading case. . . ." Id., 418. The New Jersey court reviewed a state statute similar to Connecticut's General Statutes § 14-129, which provides in relevant part: "[a]ny person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in subsection (b) of this section. . . ." CT Page 11181
The New Jersey court found that "it is the well-settled policy of this state to consider a self-insurance certificate as the equivalent of a policy of insurance" for purposes of the New Jersey statute requiring compulsory liability insurance. Id., 422. TheRyder/P.I.E. Nationwide case, however, dealt with the limits of the self-insured's liability, not whether a self-retained limit of liability can be considered "other collectible insurance" for purposes of determining which insurance company is primarily responsible to pay a claim of its insured.
The court believes that the better view is that of the majority of courts, that self-insurance does not constitute "other insurance," and finds that the plaintiff had a self-insured retention of $500,000 and was, therefore, essentially uninsured for that amount. "As a result, [the insured] cannot be viewed as having `insurance', as that term is plainly and ordinarily used, since it had no insurance for valid claims made which were under [its retained limit]." Wake County Hospital System. Inc. v.National Casualty Company, supra, 804 F. Sup. 775.
The court further finds that the Lexington policy was an excess, or umbrella, insurance policy and does not constitute "other collectible insurance" as that term is used in the defendant's policy. Connecticut courts have addressed whether an excess or umbrella insurance policy is an insurance policy within the meaning of the state's uninsured motorist statute, General Statutes § 38a-336. See Curran v. Aetna Casualty Surety Co.,222 Conn. 657, 668, 610 A.2d 1198 (1992); Mass. v. United StatesFidelity Guaranty Co., supra, 222 Conn. 639 (where court found that an excess or umbrella policy "is not an automobile liability insurance policy within the meaning of [§ 38a-336].")
In Cohn v. Pacific Employers Ins. Co., 213 Conn. 540,569 A.2d 544 (1990), the court determined that § 38a-175c (now § 38a-336) does not require uninsured motorist coverage to be included in "excess" or "umbrella" insurance policies. The court based its decision on the language of the umbrella policy and determined that the policy was an excess "indemnity" policy and was not an automobile liability policy within the meaning of the uninsured motorist statute. Id., 546-47.
"Whether an insurance contract is a liability policy or an indemnity policy depends upon the intention of the parties, as evidenced by the phraseology of their agreement. . . . The chief CT Page 11182 difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured." Black v. Goodwin, Loomis and Britton, Inc.,239 Conn. 144, 155-56, 681 A.2d 293 (1996).
In the present case, the plaintiff's policy with Lexington has an excess insurance clause, which provides:
 "Subject to the terms, conditions, provisions and exclusions contained in this policy, the company will indemnify the Insured for Ultimate Net Loss in excess of the retained limits
stated in the Declarations which the Insured shall become legally obligated to pay as damages because of:
A. Bodily Injury or
B. Property Damage
 to which this policy applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading of any automobile."
(Emphasis added).
The Lexington policy, by its plain language, provides that Lexington will indemnify the plaintiff, but only in excess of the self-insured retention limit of $500,000. Accordingly, the court finds that neither the plaintiff's self-insured retention limit nor the plaintiff's excess indemnity policy qualifies as "other collectible insurance" under the excess insurance clause in the defendant's insurance policy covering the automobile owned by the plaintiff that was involved in the accident forming the basis for the present lawsuit.[4]
III. Plaintiff's Complaint
Having determined that the plaintiff is an insured under the defendant's insurance policy, which is the primary policy for purposes of the plaintiff's claim, the court will next turn to the claims raised in the complaint.
A. Breach of Contract
In count one of its complaint, the plaintiff alleges that, "[d]espite demand of the plaintiff, the defendant, Hartford AI, CT Page 11183 refused and neglected to indemnify or defend its insured, Agency and Linden Higgins for claims made by [the injured party], thereby breaching the terms of the policy." In count two, the plaintiff claims that, "[d]espite demand of the Plaintiff, the defendant, Hartford AI, has refused and neglected to contribute to the limits of its policy, $20,000, toward the settlement of the claim of [the injured party] against the defendant's insured, thereby breaching the terms of the policy."
"In pleading an action for breach of contract, plaintiff must plead: 1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach." Chem-Tek Inc. v. General MotorsCorp., 816 F. Sup. 123, 131 (D. Conn. 1993), citing O'Hara v.State, 218 Conn. 628, 590 A.2d 948 (1991). In the present case, the plaintiff alleges that the parties had an agreement, that the plaintiff demanded indemnification and defense, which was covered by the agreement, the defendant failed to indemnify and defend the plaintiff, and the plaintiff incurred a loss of $20,000 paid to the injured party in the prior lawsuit, which was the defendant's responsibility under the terms of the policy, as well as legal expenses, costs and attorney's fees in defending the prior lawsuit.
Having determined that the plaintiff was an insured under the defendant's insurance policy and was, thus, entitled to recover under the policy, the next question to be determined is whether the defendant breached a duty to defend the plaintiff in the prior lawsuit. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The policy words must be accorded their natural and ordinary meaning. . . ."Hansen v. Ohio Casualty Insurance Company, supra, 239 Conn. 542-43. In the present case, under PART A — LIABILITY COVERAGE, the defendant's insurance policy provides:
 "A. We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. . . ."
The language of the defendant's insurance policy provided that the defendant had a duty to defend any insured that became legally CT Page 11184 responsible for any claim or suit asking for damages for bodily injury or property damage. Accordingly, the defendant had a duty to defend the plaintiff and Linden Higgins in the prior lawsuit because both persons qualify as insureds under the defendant's policy.
"It is well settled that an insurer who maintains that a claim is not covered under its insurance policy can `either refuse to defend or it [can] defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose.' Missionaries of the Company ofMary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 113,230 A.2d 21 (1967) (Missionaries). An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured. Alderman v. Hanover Ins.Group, 169 Conn. 603, 611, 363 A.2d 1102 (1975); Missionaries,supra, 114." Black v. Goodwin Loomis and Britton, Inc., supra,239 Conn. 152-53, 681 A.2d 293 (1996). In the present case, the parties submitted a joint stipulation of facts, stating that "[t]here is no dispute by the Defendant that the value of the claim was $120,000," which was the amount paid by the plaintiff to settle the prior lawsuit.
The court finds that the defendant breached its contract of insurance to indemnify and defend the claim brought by the injured party against the plaintiff in a prior action. Further, the defendant is liable to the plaintiff up to the limit of liability fixed by its policy, or $20,000. See Schurgast v. Schumann,156 Conn. 471, 491, 242 A.2d 695 (1968) ("In the instant case, [the insurer] chose to refuse to defend and, in so doing, breached its contract with the [insured]. It is therefore under a duty to pay the judgment obtained against the [insured] by [the injured party] up to the limit of liability fixed by its policy.").
Although the plaintiff could be entitled to recover the costs and expenses it incurred in defending the prior action brought against it by the injured party, it has not submitted evidence of such expenses. See St. Margaret's-McTernan School v. Thompson,31 Conn. App. 594, 596, 627 A.2d 449 (1993), citing Bertozzi v.McCarthy, 164 Conn. 463, 468, 323 A.2d 553 (1973) ("Contract damages, as a general rule, are awarded to place the injured party in the same position it would have been in had the contract been fully performed."). CT Page 11185
B. Waiver
In its trial brief, the plaintiff argues that the defendant waived its right to deny the plaintiff coverage for the accident when the defendant "accepted" coverage responsibility for the accident. The plaintiff, in its trial brief, argues: "After being notified by its insured Sonia Williams of the accident, defendant conducted an investigation of whether there was coverage under a full reservation of rights. (Exhibit 16.) At the conclusion of its investigator, The Hartford determined that the Agency vehicle qualified as a temporary substitute vehicle under its policy and that Linden Higgins was a covered insured. (Exhibits 4, 5, 12, 13, 14, 15.) The Hartford maintained this position for nearly four years until this action was commenced. The Hartford's actions with regard to the threshold issue of coverage constitute a waiver of any rights it had under the policy to disclaim coverage. At oral argument the defendants agreed that "factually" there was a waiver on its part.
Such a waiver however, is a waiver of its legal right. Waiver can be express or implied by acts or conduct. The defendants' actions in accepting coverage over a period of nearly four years constituted a waiver of its right to disclaim coverage. Jenkins v.Indemnity Ins. Co., 152 Conn. 249 (1964); National Casualty Ins.Co. v. Stella, 26 Conn. App. 462 (1992).
C. Bad Faith
In count five, the plaintiff claims that the defendant's failure to indemnify and defend the plaintiff under its insurance policy "constitutes a breach of its implied covenant of good faith and fair dealing in attempting to effectuate a prompt, fair and equitable settlement of a claim in which liability had become reasonably clear."
In its trial brief, the defendant argues that, because it did not breach a contract of insurance with the plaintiff, it cannot be held liable for a breach of an implied covenant of good faith and fair dealing. Further, the defendant argues that "it is clear that the defendant acted in good faith and prior to the institution of this litigation by the plaintiff, the defendant requested that the dispute between the parties be arbitrated to avoid the expenses now claimed by the plaintiff in the nature of substantial legal expenses, costs and attorneys' fees." CT Page 11186
The court, thus, must decide the issue of whether the defendant, in breaching its contract of insurance with the plaintiff as an insured, is also liable for breach of an implied covenant of good faith and fair dealing. Connecticut "recognizes an independent cause of action in tort arising from an insurer's common law duty of good faith. This cause of action is separate and distinct from the plaintiff's statutory claims. . . . An implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships, including . . . insurance contracts. . . ." (Citations omitted; internal quotation marks omitted.) Buckman v. People Express, Inc.,205 Conn. 166, 170-71, 530 A.2d 596 (1987).
"In Grand Sheet Metal Products Co. v. Protection Mutual Ins.Co., 34 Conn. Sup. 45, 375 A.2d 428 (1977), the trial court overruled the defendant's demurrer to the plaintiff's complaint asserting a tortious breach of contract and seeking recovery, against its fire insurer beyond the amount of the policies in question on the ground of bad faith business conduct. The court's ruling was on the ground that a bad faith breach of contract gave rise to a distinct tort claim, following Gruenberg v. Aetna Ins.Co., 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973).Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co.,supra, 50. The California Supreme Court in Gruenberg held: `It is manifest . . . that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' Gruenberg v. Aetna Ins. Co., supra, 575." L.F. Pace Sons, Inc. v. Travelers Indemnity Co.,9 Conn. App. 30, 46, 514 A.2d 766, cert. denied, 201 Conn. 811,516 A.2d 886 (1986).
"The guiding principle of law applicable to the recovery of punitive damages for breach of contract obligations, express or implied, is . . . [p]unitive damages are not ordinarily recoverable for breach of contract. . . . Breach of contract founded on tortious conduct may allow the award of punitive damages. Such tortious conduct must be alleged in terms of wanton and malicious injury, evil motive and violence, for `punitive damages may be awarded only for outrageous conduct, that is, for acts done with bad motive or with a reckless indifference to the interests of CT Page 11187 others. . . .'" (Citations omitted.) Id., 47-48, quoting TriangleSheet Metal Works, Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220
(1966). "Thus, there must be an underlying tort or tortious conduct alleged and proved to allow punitive damages to be granted on a claim for breach of contract, express or implied. Elements of tort such as wanton or malicious injury or reckless indifference to the interests of others giving a tortious overtone to a breach of contract action justify an award of punitive or exemplary damages. In our jurisdiction such recovery is limited to an amount which will serve to compensate the plaintiff to the extent of his expenses of litigation less taxable costs." L.F. Pace Sons, Inc.v. Travelers Indemnity Co., supra, 9 Conn. App. 48.
In the present case, the plaintiff fails to allege elements of tort in complaining that the defendant failed to indemnify and defend its insured under the relevant insurance policy. "In order to make [a claim of breach of the covenant of good faith and fair dealing] the plaintiff must allege that the defendant did more than simply deny the plaintiff's claim for benefits." Puglio v.National Grange Mutual Ins., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 303610 (October 12, 1993) (Maiocco, J.). Accordingly, the court finds that the plaintiff may not recover punitive damages because it failed to allege that the defendant tortiously breached its contract of insurance.
CONCLUSION
The court finds that the plaintiff was an insured under the defendant's policy of insurance and that the defendant had primary responsibility to indemnify the plaintiff. It is further found that the defendant breached the parties' contract of insurance by refusing to indemnify and defend the plaintiff and that the plaintiff is entitled to recover up to the limits of liability under the policy.
The plaintiff cannot recover punitive damages or attorney's fees for the present action because the plaintiff, by law, may not recover under a common law theory of a breach of the implied covenant of good faith and fair dealing.
Finally, after filing the present action with a return date of November 2, 1993, the plaintiff filed an offer of judgment on May 5, 1994 in the amount of $20,000. Accordingly, the plaintiff is entitled to interest on the judgment of $20,000 from the date of the filing of the offer of judgment at a rate of twelve percent per CT Page 11188 annum, pursuant to General Statutes § 52-192a.[5]
Judgment may enter for the plaintiff in the amount of $20,000 plus interest at the rate of twelve percent per annum from May 5, 1994 to date in the amount of $8,321.76 for a total of $28,321.76.
Freed, J.